Eagle Star Insurance Company of Puerto Rico, demandante y recurrente, *v.* La Esperanza Sugar Plantation Hotel Corporation, demandada y recurrida.

*Número:* RE-94-447 *Resuelto:* 7 de abril de 1998

*Pedro Toledo González*, abogado de la recurrente; *Pedro A. Del Valle Ferrer* y *Griselle M. Robles Ortiz*, abogados de la recurrida Banco Gubernamental de Fomento.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

Entre el 18 de julio de 1984 y el 18 de diciembre de 1985, el *Banco Gubernamental de Fomento* (en adelante *Banco Gubernamental*) prestó más de un millón seiscientos mil dólares ($1,600,000) a *La Esperanza Sugar Plantation Hotel Corp.* (en adelante *La Esperanza*), con garantía de primera hipoteca sobre bienes inmuebles[1] y muebles.[2] El financiamiento exigía una póliza de seguro que cubriera

---

[1] Escritura de Hipoteca Núm. 45 de 18 de julio de 1984, ante el notario Luis E. López Correa, que garantiza el principal de un millón quinientos mil dólares ($1,500,000). Luego, la hipoteca se amplió mediante la Escritura Núm. 8 de 27 de febrero de 1985, ante el mismo notario, por la cantidad de cien mil dólares ($100,000). Ambas obligaciones se hicieron constar en pagarés a favor del portador. El 18 de diciembre de 1985 se suscribió un pagaré (*Secured Promissory Note*) por el total de un millón seiscientos mil dólares ($1,600,000) a favor del *Banco Gubernamental de Fomento* (en adelante el *Banco Gubernamental*).

[2] Hipoteca de bien mueble otorgada el 18 de diciembre de 1985.

daños por huracán. *La Esperanza* obtuvo dicha póliza, pero, posteriormente no la renovó. Ante ese *incumplimiento*, y con notificación a *La Esperanza*, el 30 de noviembre de 1988 el *Banco Gubernamental* colocó las propiedades hipotecadas bajo su póliza maestra (*master policy*) Núm. IM-300641([3]) con la Eagle Star Insurance Co. of P.R., la cual protegía varias propiedades en que el *Banco Gubernamental* era acreedor hipotecario,([4]) y cuya póliza subsidiaria pagaría en la eventualidad de que no existiera una póliza principal.

*La Esperanza nunca realizó pago alguno del préstamo.* Así las cosas, conforme a los términos de las escrituras antes mencionadas, el 23 de junio de 1989 el *Banco Gubernamental* declaró la deuda líquida y exigible, demandó para el cobro de dinero y la ejecución de hipoteca en el Tribunal Superior, Sala de Humacao, y eventualmente obtuvo la sentencia a su favor.([5]) Por su parte, el 1ro de julio de 1989 *La Esperanza* adquirió una póliza de seguro con la

---

([3]) Esta póliza aparece en el expediente identificada como IM-300641; IM-300-641 y IM-3000641.

([4]) Según el Certificado de Seguro Núm. 006, los límites de la cubierta fueron un millón setecientos cuarenta y siete mil dólares ($1,747,000) para los bienes inmuebles y cincuenta y nueve mil trescientos dólares ($59,300) para los muebles.

([5]) Civil Núm. CS89-882. Tomamos conocimiento judicial que el 11 de diciembre de 1990 el Tribunal Superior de Puerto Rico, Sala de Humacao (Hon. Aldo Segurola de Diego, Juez) dictó Resolución y Sentencia Parcial (notificada y registrada el 17 del mismo mes) en la cual reconoció al *Banco Gubernamental* el crédito por la suma principal de un millón seiscientos mil dólares ($1,600,000), garantizada por hipoteca, y ordenó que se ejecutara la propiedad si no era satisfecha. Luego, el mismo tribunal, mediante Sentencia de 14 de febrero de 1991, notificada el 4 de marzo, reconoció el derecho del *Banco Gubernamental* sobre los intereses reclamados y garantizados por la misma hipoteca, ordenando su ejecución de ser necesario.

La venta judicial en cuestión se llevó a cabo el 15 de junio de 1995, y el *Banco Gubernamental* fue el único postor, adjudicándose la propiedad en *buena pro*.

Por otro lado, el 12 de junio de 1995 el Lcdo. Carlos Rodríguez Quesada, en su capacidad como Síndico Liquidador Federal de *La Esperanza Sugar Plantation Hotel Corp.* (en adelante *La Esperanza*), presentó una demanda en el Tribunal de Primera Instancia, Sala Superior de San Juan (Núm. KAC95-0747), para solicitar la nulidad de sentencia y procedimientos de ejecución en el Caso Núm. CS89-882 antes referido. Esta acción se trasladó al Tribunal de Primera Instancia, Sala Superior de Fajardo, en Humacao (Núm. NAC95-0132).

Oportunamente, ese tribunal (Hon. Reinaldo de León Martínez, Juez) dictó la sentencia el 12 de abril de 1996, notificada el 19 de ese mes, en la que desestimó la demanda de nulidad. *Ese dictamen advino final y firme.*

Eagle Star Insurance Co. (Núm. CPP-404-964), pero *no incluyó al Banco Gubernamental en sus endosos.*

En septiembre de 1989, el huracán Hugo, en su trayectoria hacia Puerto Rico, azotó la Isla Municipio de Vieques, causando daños a la propiedad de *La Esperanza.* Ello provocó la presentación de dos (2) reclamaciones a Eagle Star Insurance Co., según las distintas pólizas de seguro aludidas. Al respecto, el 16 de enero de 1990 *La Esperanza* le reclamó trescientos mil dólares ($300,000) bajo la póliza Núm. CPP-404-964, mediante un comprobante de pérdida suscrito y juramentado por su Presidente Roberto López González. Indicó que, aparte del Sr. John Morrongiello, *nadie más tenía interés sobre la propiedad.*

Al tramitar dicha reclamación, la aseguradora Eagle Star Insurance Co. emitió el cheque Núm. 11258 a nombre de *La Esperanza* y el *Banco Gubernamental* por ciento cincuenta mil dólares ($150,000) en pago parcial bajo la póliza CPP-404-964 emitida a favor de *La Esperanza.* Sin embargo, como *La Esperanza* le informó que *no había un acreedor hipotecario para dicha propiedad,* este primer cheque fue anulado, y el 1ro de febrero de 1990 se expidió un segundo cheque (Núm. 11259) por la misma cantidad, *excluyendo al Banco Gubernamental.* Este cheque fue entregado y cobrado por *La Esperanza.*

A su vez, el *Banco Gubernamental* reclamó doscientos cincuenta y cinco mil ($255,000) a la Eagle Star Insurance Co. bajo la póliza maestra Núm. IM-300641, según un comprobante de pérdida suscrito el 28 de marzo de 1990. Posteriormente, el 17 de abril, Eagle Star Insurance Co. emitió el cheque Núm. 12973[6] por ciento ochenta mil dólares ($180,000) a *favor del Banco Gubernamental y La Esperanza,* como pago final de la reclamación bajo póliza Núm. CPP-404-964. Este cheque, entregado al *Banco Gubernamental,* fue devuelto a la aseguradora el 12 de julio de

---

[6] La Sentencia Parcial del tribunal de instancia identifica el cheque como el Núm. *12973*, pero las copias en los autos originales lo numeran 12972.

1990, ya que a juicio del *Banco Gubernamental* debería hacerse sólo a su nombre al amparo de su reclamación en virtud de la *póliza maestra* Núm. IM-300641.

Así las cosas, Eagle Star Insurance Co. recibió dos (2) notificaciones de embargo del Departamento Federal del Tesoro —Servicio de Rentas Internas— por el dinero adeudado por *La Esperanza*. El 6 de agosto de 1990, Eagle Star Insurance Co. solicitó al Tribunal Superior, Sala de San Juan, una *petición sobre depósito de fondos (interpleader)*. Consignó los ciento ochenta mil dólares ($180,000) y pidió al tribunal que determinara a cuál de los promovidos —*La Esperanza*, el *Banco Gubernamental* o el Servicio de Rentas Internas (federal)— le correspondía en derecho. El señor Morrongiello reclamó también parte de esos fondos mediante una demanda de intervención. El *Banco Gubernamental y La Esperanza* contestaron y formularon una reconvención contra Eagle Star Insurance Co.

El 9 de abril de 1991 *La Esperanza* solicitó una sentencia sumaria parcial a su favor. Pendiente dicha moción, *La Esperanza* se acogió al Capítulo 11 de la Ley Federal de Quiebras, 11 U.S.C. sec. 1101 *et seq.* Se decretó la paralización de los procedimientos, pero posteriormente se reanudaron al desestimarse la petición de quiebra. En agosto de 1993, *La Esperanza* se acogió de nuevo a las disposiciones de la Ley Federal de Quiebras.(7) Luego de varios trámites procesales, el ilustrado tribunal de instancia (Hon. Antonio L. Corretjer Piquer, Juez), dictó una *sentencia sumaria parcial* a favor del *Banco Gubernamental*.(8) Con-

---

(7) *La Esperanza* acudió ante nosotros mediante el recurso Núm. CE-94-666, para alegar que la sentencia era nula por haberse emitido luego de una petición de quiebra. Este recurso lo declaramos no ha lugar por *incuria* el 29 de noviembre de 1994.

(8) De la sentencia parcial se desprende que *La Esperanza* y el Departamento Federal del Tesoro acordaron —con la anuencia de las otras partes— aceptar la validez de las notificaciones de incautación por los impuestos federales no pagados y debidos. Las partes estipularon que:

"a. Si el Tribunal determina que *La Esperanza* no tiene derecho alguno al dinero consignado y objeto de este pleito, entonces, el Departamento del Tesoro Federal no tendrá derecho a ninguna parte de la adjudicación;

cluyó que le correspondía la *totalidad del importe del seguro de riesgo*, al ocurrir el siniestro después de la constitución de la hipoteca. Determinó que Eagle Star Insurance Co. fue notificada previamente de la existencia del *Banco Gubernamental* como acreedor hipotecario, y por aplicación del Art. 161 de la Ley Hipotecaria y del Registro de la Propiedad (en adelante Ley Hipotecaria), 30 L.P.R.A. sec. 2557, le correspondía los ciento ochenta mil dólares ($180,000), más intereses depositados en el tribunal, en adición a ciento cincuenta mil dólares ($150,000) más los intereses legales desde la fecha cuando hizo el pago indebido a *La Esperanza*. Concluyó que no existía razón para posponer la resolución total del pleito y ordenó que se registrara la Sentencia Parcial. Eagle Star Insurance Co. y el interventor Morrongiello oportunamente solicitaron determinaciones de hecho y conclusiones de derecho adicionales, y reconsideración. *La Esperanza* también pidió una reconsideración. Estas mociones fueron declaradas no ha lugar.

A solicitud de Eagle Star Insurance Co., revisamos.[9]

## II

Coincidimos con el tribunal de instancia que Eagle Star Insurance Co. of P.R. debe pagarle al *Banco Gubernamental* ciento cincuenta mil dólares ($150,000) —más intereses— suma igual al pago parcial previamente hecho a *La*

---

"b. Si este Tribunal determina que *La Esperanza* tiene derecho a cualquier parte del dinero consignado entonces, el Departamento del Tesoro Federal tendrá la prioridad con respecto a la cantidad otorgada a *La Esperanza* hasta que se satisfaga completamente su deuda contributiva;

"c. El Departamento del Tesoro Federal no tendrá derecho a reclamar dinero que pueda ser otorgado a Eagle Star o al Banco como resultado de esta demanda."

[9] En su solicitud imputa al foro de instancia error al determinar que el pago de ciento cincuenta mil dólares ($150,000) hecho por Eagle Star Insurance Co. a *La Esperanza* correspondía al *Banco Gubernamental* y, en consecuencia, estuvo mal hecho; error al determinar que debe pagar nuevamente los ciento cincuenta mil dólares ($150,000) que pagó a *La Esperanza*, más interés legal que habría de ser computado desde la fecha cuando hizo dicho pago indebido.

*Esperanza,* además de los ciento ochenta mil dólares ($180,000) pendientes de cobrar. Como acreedor, el *Banco Gubernamental* está protegido por varios preceptos de nuestra Ley Hipotecaria que son reguladores de la extensión de la hipoteca a lo concedido o debido al propietario por razón del seguro sobre la propiedad. Elaboremos.

Los Arts. 160 y 161 de la Ley Hipotecaria, en lo pertinente, disponen:

> *La hipoteca se extiende* a[l] ... importe de las indemnizaciones *concedidas o debidas al propietario* por los aseguradores de los bienes hipotecados .... (Énfasis suplido.) 30 L.P.R.A. sec. 2556.
>
> ... [S]e *entenderán hipotecados juntamente con la finca,* aunque no se mencionan en el contrato, siempre que corresponda al propietario:
>
> . . . . . . . . .
>
> ... [l]as indemnizaciones concedidas o debidas al propietario de los inmuebles hipotecados, bien por el aseguramiento de éstos *siempre que haya tenido lugar el siniestro después de constituida la hipoteca ....* Si cualquiera de estas indemnizaciones debiera hacerse efectiva *antes del vencimiento* de la obligación asegurada y *quien haya de satisfacerla hubiere sido notificado previamente de la existencia de la hipoteca* se depositará su importe en la forma que convengan los interesados o, a falta de tal convenio, en la que disponga el tribunal. (Énfasis suplido.) 30 L.P.R.A. sec. 2557.

Bajo idénticos principios —los Arts. 109 y 110 de la Ley Hipotecaria española— y sus antecedentes legislativos, los tratadistas españoles reconocen que *nuestro citado Art. 161 encierra dos (2) disposiciones distintas.* J.M. Chico y Ortiz, *Estudios sobre Derecho Hipotecario,* 3ra ed., Madrid, Ed. Marcial Pons, 1994, T. II, págs. 1400–1402; J. Morrell y Terry, *Comentarios a la Legislación Hipotecaria,* 2da ed., Madrid, Ed. Reus, 1928, T. 3, págs. 720–734; A. De Cossío y Corral, *Instituciones de Derecho Hipotecario,* Madrid, Ed. Civitas, 1986, págs. 348–349; R.M. Roca Sastre y L. Roca-Sastre Muncunill, *Derecho Hipotecario,* 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, Vol. 1, págs. 567–592; F. Campuzano y Horma, *Principios generales de derecho*

*inmobiliario y legislación hipotecaria*, 2da ed., Madrid, Ed. Reus, 1941, T. II, págs. 148–154. Expongámoslas.

 Como *norma general*, las indemnizaciones concedidas o debidas al propietario de los inmuebles hipotecados por el aseguramiento, siempre que el siniestro *ocurra después* de haber sido constituida la hipoteca, *se entienden como hipotecadas juntamente* con la finca. Por otro lado, cuando específicamente la indemnización aludida *deba hacerse efectiva antes de su vencimiento* y el asegurador hubiere sido notificado previamente de la existencia de la hipoteca, el Art. 161 de la Ley Hipotecaria, *supra*, le obliga depositar su importe en la forma que convenga más a los interesados o consignarlo en el tribunal.

El caso de autos encaja en la situación general antes descrita: la hipoteca se constituyó cuatro (4) años *antes* del huracán que generó la indemnización. Debido a la naturaleza de la obligación asegurada, ésta se declaró líquida y exigible el 23 de junio de 1989 por falta de pago conforme a los términos de las escrituras antes mencionadas, *casi tres (3) meses antes de dicho siniestro.*

El transcrito Art. 161 expresamente impone una obligación legal al asegurador *antes* de haber sido vencida la obligación; nada dice sobre el pago posterior. Nuestra Ley Hipotecaria —igual que la española—([10]) guarda silencio cuando la indemnización por seguro se hace efectiva *después* de vencida la obligación. Chico y Ortiz, *op. cit.*, pág. 1400; Morrell y Terry, *op. cit.*, pág. 727; J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1983, T. III, Vol. 3, pág. 134.

 Algunos tratadistas opinan que es irrelevante si la obligación está vencida o no para que active la subroga-

---

([10]) Ante esta laguna, el 8 de octubre de 1980 España estableció en el Art. 40 de su Ley Hipotecaria, que si el siniestro ocurre después de constituida la garantía, sin tomar en consideración el estado de la obligación garantizada, el asegurado debe comunicar al asegurador la constitución de la hipoteca. Así, el asegurador no puede pagar sin el consentimiento del acreedor hipotecario. J.M. Chico y Ortiz, *Estudios sobre Derecho Hipotecario*, 3ra ed., Madrid, Ed. Marcial Pons, 1994, T. II, pág. 1401.

ción real. Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, pág. 575 esc. 2. Morrell, al interpretar una versión anterior equivalente a nuestro Art. 161 —que no contenía expresiones sobre el vencimiento de la obligación, pero cuyo reglamento recogía esa limitación— *contesta tajantemente en la afirmativa de que la hipoteca se extiende a tal indemnización.* El espíritu de la ley, aunque utilice la palabra "vencimiento", es cubrirlas. Lo determinante es que el siniestro ocurra luego de haber constituido la hipoteca y de que la indemnización se haga (o deba hacerse) antes de que sea efectivo el crédito garantizado. No importa que el siniestro ocurra después de haber vencido la deuda. Morrell y Terry, *op. cit.*, págs. 725–726. Si el crédito indemnizatorio nace vencida la obligación, pero antes de ser satisfecha, la hipoteca se extiende al crédito indemnizatorio por razón de siniestro. F. Blasco Gasco, *La extensión objetiva legal de la hipoteca (Los artículos 109 y 110 de la Ley Hipotecaria)*, L (Núms. 592–593) Rev. Gen. Der. 17, 60–63 (1994); Morrell y Terry, *op. cit.*, pág. 726.

■ Si bien el Art. 161 de la Ley Hipotecaria, *supra*, no menciona si el acreedor o deudor hipotecario deba notificarle al asegurador, el criterio se inclina a imponerle al acreedor interesado defender su derecho prioritario y, por ende, justificar y vigilar sus derechos sobre tales indemnizaciones. Morrell y Terry, *op. cit.*, pág. 727; Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, pág. 578.2.[11]

---

[11] Campuzano, a diferencia de la mayoría de los tratadistas, piensa que aun cuando se notifique a la aseguradora de la existencia de la hipoteca, el pago al propietario siempre es válido, ya que el legislador nunca lo ha calificado como nulo. F. Campuzano y Horma, *Principios generales de derecho inmobiliario y legislación hipotecaria*, 2da ed., Madrid, Ed. Reus, 1941, T. II, pág. 154.

En el otro extremo, Pérez González estima que no se libera de responsabilidad el asegurador que haya hecho el pago al propietario, aun cuando *no* tuviera notificación de que la propiedad estuviese gravada. Considera al acreedor asegurado titular o coacreedor de la indemnización. R.M. Roca Sastre y L. Roca-Sastre Muncunill, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, Vol. 1, pág. 579. El asegurador no está obligado a procurarse conocimiento de la existencia de la hipoteca; es un sujeto pasivo receptor de la declaración de conocimiento. F. Blasco Gasco, *La extensión objetiva legal de la hipoteca (Los artículos 109 y 110 de la Ley Hipotecaria)*, L (Núms. 592–593) Rev. Gen. Der. 17, 70–72 (1994).

Nuestra Ley Hipotecaria tampoco impone al propietario de la finca (ni al acreedor hipotecario) obligación expresa de comunicar al asegurador la existencia de la hipoteca. Roca Sastre, al comentar los Arts. 109 y 110 de la Ley Hipotecaria española —idénticos a los Arts. 160 y 161 nuestros— nos orienta:

> ... la empresa aseguradora no debe preocuparse de averiguar si sobre la finca siniestrada pesa alguna hipoteca, de modo que puede satisfacer al propietario, con plenos efectos liberatorios, el importe de la indemnización correspondiente, sin intervención alguna del acreedor hipotecario, resultando bien hecho tal pago. Solamente cuando medie notificación, queda vinculada la empresa aseguradora en el sentido de no poder efectuar dicho pago sin el consentimiento del acreedor hipotecario, procediéndose al mencionado depósito o consignación. Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, pág. 579.

■ Vemos, pues, que los Arts. 160 y 161 de nuestra Ley Hipotecaria, *supra*, no son un obstáculo para resolver que si el asegurador es consciente del derecho hipotecario, no puede pagar la indemnización al dueño de la propiedad sin el consentimiento del acreedor. Otra vez, Roca Sastre nos ilustra: "[l]a ley no habla de cuando la indemnización por seguro haya de hacerse efectiva después de vencida la hipoteca que grava la finca siniestrada. En este caso habrá que distinguirse según que haya habido o no notificación al asegurador, de modo que si no se ha efectuado, éste paga bien la indemnización por seguro verificándolo al propietario, aunque no concurra el acreedor hipotecario". (Énfasis suprimido.) Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, pág. 579. Puig Brutau comenta que en el caso de la obligación garantizada vencida "no hay duda que, si no ha habido notificación, el asegurador puede pagar al propietario". Puig Brutau, *op. cit.*, págs. 134–135.

En las palabras de Díaz González:

> ... [S]i después de hecha la notificación la Compañía aseguradora paga directamente al deudor y éste no satisface al acreedor sus legítimos intereses, *la Compañía habría pagado mal y*

tendría que volver a satisfacer el crédito hipotecario. Es evidente también que si el acreedor olvida hacer la notificación y la Compañía aseguradora paga al dueño-deudor, paga bien y quedará totalmente liberada. (Énfasis suplido.) C. Díaz González, *Iniciación a los estudios de derecho hipotecario*, Madrid, Ed. Rev. Der. Privado, 1967, T. III, pág. 67.

## III

Lo expuesto nos lleva al problema de la notificación y a precisar si en efecto la Eagle Star Insurance Co. fue notificada de la existencia del *Banco Gubernamental* como acreedor hipotecario, de tal forma que estaba impedida de pagar a *La Esperanza.*

■ Ni nuestra Ley Hipotecaria ni la española establecen un método específico de notificación. No requieren una notificación formal ni mencionan ni excluyen el conocimiento informal. Notificar es "[d]ar extrajudicialmente noticia de una cosa o suceso". I. Rivera García, *Diccionario de Términos Jurídicos*, New Hampshire, Ed. Equity, 1985, pág. 182. Es hacer saber; *poner en conocimiento. Diccionario de Derecho Civil*, Madrid, Ed. Aranzadi, 1984, T. II, págs. 251–252.

■ El propósito del Art. 161 de la Ley Hipotecaria, *supra*, radica "no tanto en el hecho de la notificación cuanto en la *puesta de conocimiento del asegurador de la existencia de la hipoteca sobre la finca asegurada y siniestrada*". (Énfasis suplido.) Blasco Gasco, *op. cit.*, pág. 71. La declaración de conocimiento persigue evitar el perjuicio al acreedor hipotecario y asegurar la garantía hipotecaria. Si el asegurador *no conocía la existencia del gravamen hipotecario* sobre la finca asegurada y el objeto del siniestro, el pago que efectúe será válido y eficaz.([12]) El

---

([12]) Campuzano, en abierta crítica a esta norma expresa: "Como la ley no prohíbe que el asegurador pague al propietario el importe del siniestro, siendo este pago

conocimiento del asegurador basta para que no pague la indemnización al deudor sin obtener el consentimiento del acreedor hipotecario. *Es suficiente que el asegurador tenga conocimiento —aunque motu proprio— de la existencia de la hipoteca.* El hecho de no observarse determinada forma de notificación, no lo exime de abstenerse de realizar el pago de la indemnización al deudor sin obtener el consentimiento previo del acreedor hipotecario.

En el caso de autos, la aseguradora Eagle Star Insurance Co. tuvo *conocimiento real* por parte del *Banco Gubernamental* de que la propiedad estaba hipotecada a su favor. Desde el 30 de noviembre de 1988 le notificó que tenía interés como acreedor en la propiedad al *específicamente* colocarla bajo su póliza de seguro Núm. IM-300641, cuyo fin especial, con pleno conocimiento de la Eagle Star Insurance Co., era asegurar las propiedades en las cuales el *Banco Gubernamental* era acreedor hipotecario. La aseguradora expidió una cubierta sobre *La Esperanza* al amparo de esta póliza general. Así Eagle Star Insurance Co. extendió dos (2) pólizas y aseguró la *misma propiedad*: una a favor del *Banco Gubernamental* bajo la póliza maestra y de exceso, y una primaria a favor de *La Esperanza*. La póliza maestra protegía al *Banco Gubernamental* de pérdidas en propiedades hipotecadas a su favor, que el propietario omitió asegurar. Evidentemente, por notificación directa, o *motu proprio*, Eagle Star Insurance Co. conoció que el *Banco Gubernamental* era acreedor. Así se desprende indubitadamente del acto de emitir un primer pago parcial a favor de *La Esperanza* y del *Banco Gubernamental*.

A pesar de que el *Banco Gubernamental* no reclamó hasta marzo de 1990, al emitir el cheque Núm. 11258 antes de febrero de 1990 la aseguradora había reconocido que éste tenía un interés en la propiedad. Aún así, nos dice que

---

válido, sucederá muchas veces que cuando el acreedor tenga conocimiento del hecho ha quedado imposibilitado para ejercitarle". Campuzano y Horma, *op. cit.*, págs. 153–154.

"verificó a través de su Departamento de Suscripción la existencia de algún interés del Banco [Gubernamental] en la póliza de *La Esperanza* y no encontraron ninguno". *No convence.* Si en efecto verificó y no encontró mención alguna de que el *Banco Gubernamental* era acreedor hipotecario según esa póliza, y, por ende, ignoraba el interés de dicho Banco en la propiedad siniestrada, ¿cómo explica la emisión del primer cheque de pago parcial a nombre de *La Esperanza* y el *Banco Gubernamental*? Incluso el segundo cheque hecho bajo la reclamación de *La Esperanza tam-bién se hizo a favor del Banco Gubernamental entregándo-sele directamente al banco, no al asegurado.*

En resumen, la notificación que le dio el *Banco Guber-namental* en 1988 a la Eagle Star Insurance Co. y el cono-cimiento que ésta adquirió son suficientes para responsabilizarla.

Según expuesto, *vencida la obligación asegurada*, el propietario del bien hipotecado no es acreedor a la indemnización. Corresponde al acreedor hipotecario, prote-gido por el Art. 160 de la Ley Hipotecaria, *supra*, la dispo-sición general de su citado Art. 161 y la figura de la subro-gación real. Éste se subroga en lugar del deudor y debe recibirla directamente.

■ En el caso de autos, Eagle Star Insurance Co. pagó erróneamente. Conforme el Art. 1116 de nuestro Có-digo Civil, 31 L.P.R.A. sec. 3166,[13] el pago hecho *equivo-cadamente no* extingue la obligación.

## IV

■ Eagle Star Insurance Co. argumenta también que "pagarle nuevamente al Banco resultaría en pagarle dos veces por el mismo concepto pues el producto del pago

---

[13] "El pago deberá hacerse a la persona en cuyo favor estuviese constituida la obligación, o a otra autorizada para recibirlo en su nombre." 31 L.P.R.A. sec. 3166.

se utilizó para reparar parcialmente la propiedad hipotecada". *No tiene razón.* Para que pueda hacer el pago antes de que la obligación garantizada esté vencida, la Ley Hipotecaria requiere el acuerdo entre el acreedor hipotecario y el propietario. Ahora bien, *una vez vencida la obligación*, la situación varía, pues el *Banco Gubernamental* era el *único* acreedor facultado para recibir el dinero y acreditarlo a la deuda. *La Esperanza*, como deudora, estaba impedida de utilizar el importe de la indemnización para efectuar reparaciones en la propiedad, a menos que el *Banco Gubernamental*, como acreedor, lo hubiese autorizado. Roca Sastre y Roca-Sastre Muncunill *op. cit.*, págs. 575–576 esc. 2.

*No podemos olvidar que el propósito del seguro es que la propiedad que sirve de garantía al préstamo hipotecario no quede devaluada por los daños causados por un siniestro.* Según la figura de la subrogación real, el dinero en sí viene a sustituir o reemplazar —total o parcialmente— la cosa hipotecada. Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, pág. 574. Aquí, el inmueble en su integridad original garantizaba la hipoteca en el estado que tenía cuando se constituyó. La ley protege y regula los cambios que sufre la propiedad mientras ésta garantice el crédito. Campuzano y Horme, *op. cit.*, pág. 148. Bajo la subrogación real se sustituye la garantía hipotecaria o *parte de ésta* por otro bien: la indemnización concedida por siniestro.

Nuevamente Roca Sastre nos dice:

La aplicación de la subrogación real hipotecaria a las indemnizaciones por razón del seguro de la cosa gravada siniestrada se explica, pues, fácilmente, ya que el siniestro ha venido a efectuar la conversión o transformación de la cosa hipotecada, en dinero, que es precisamente el objetivo que persigue la ejecución hipotecaria. (Escolio omitido.) Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, pág. 575.

A su vez, Puig Brutau, *op. cit.*, pág. 133,([14]) expone que

[l]as indemnizaciones concedidas o debidas al propietario por razón de los bienes asegurados es lo que sustituye a la finca en el patrimonio del propietario indemnizado, y es justo, por tanto, que también la sustituya como objeto de derecho de hipoteca. La Ley impone en este caso la subrogación real, que es la permanencia del derecho sobre el nuevo objeto que ha sustituido al antiguo.

La mayoría de los tratadistas no tienen duda de que en el caso de la hipoteca y la subrogación real por las indemnizaciones por seguro, la Ley Hipotecaria "no faculta al dueño de la finca siniestrada para *reconstruirla* o sustituirla con otra, sino que sujeta *siempre* a la hipoteca el importe de la indemnización por seguro". (Énfasis suplido.) Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, págs. 575–576 esc. 2. La situación es diferente en Alemania, Suiza e Italia, donde el derecho del acreedor sobre la indemnización cesa si ésta se utiliza para reconstruir. Íd. Aunque esta norma puede criticarse, refleja la realidad del derecho hipotecario español y, por analogía, el nuestro.([15])

---

([14]) Este precepto de subrogación ha estado presente en el Derecho español desde las Leyes de Partida. Entre las razones expuestas en la Exposición de Motivos de la Ley Hipotecaria, la subrogación real se justificó por fundamentos de equidad. El legislador entendió que el acreedor no poder obligar al deudor a ampliar la hipoteca si sufriera menoscabo, como justa compensación, debería beneficiarse de los cambios positivos que sufra el inmueble. F. Beraud, y M. Lezón Fernández, *Tratado de Derecho Inmobiliario*, (Adaptado al programa de oposiciones a notarios), Madrid, Ed. Reus, 1927, págs. 218–219.

([15]) Debido a la naturaleza transitoria del gravamen hipotecario, la subrogación por indemnización se tiene que hacer en forma diferente al trato que se da con el censo. Roca Sastre y Roca-Sastre Muncunill, *op. cit.*, pág. 575 esc. 2. Por lo tanto, el propietario no tiene la misma opción que tiene al amparo del Art. 192 de nuestra Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2611.

Por otro lado, Chico y Ortiz, *op. cit.*, pág. 1401, piensa que por analogía, sí tendría esta opción.

Morrell y Terry señala que pocos tratadistas, entre éstos Aragonés, han identificado la figura como injusta. Estos pocos proponen que debería ser el dueño del inmueble quien decida qué hacer con la indemnización. Pero Morrell y Terry señala que según el ordenamiento español —igual que en Puerto Rico— el dueño no puede utilizar la indemnización para la reconstrucción o reposición de su finca sin la anuencia del acreedor. Aunque la propuesta de Aragonés podría ser ideal, no es práctica, ya que nada ni nadie garantiza que el deudor utilice los fondos para reponer el bien

# V

Una vez el tribunal de instancia determinó que la aseguradora Eagle Star Insurance Co. pagó mal y la indemnización garantizaba la obligación asegurada por la hipoteca del *Banco Gubernamental,* adoptó una de las teorías más aceptadas sobre la aplicación que se hace de la indemnización adjudicada a dicho acreedor hipotecario. La cuestión tampoco ha estado exenta de debate.

Algunos tratadistas opinan que, según la Ley Hipotecaria, el acreedor tiene derecho a pedir que se le entreguen las indemnizaciones debidas al propietario en pago de su crédito. Campuzano y Horma, *op. cit.,* pág. 153. Entienden que la ley exige que la indemnización se aplique, en primer lugar, a pagar la obligación garantizada por la hipoteca y el sobrante, si alguno, pertenece al propietario de la finca siniestrada. Díaz González, *op. cit.,* pág. 66. Otros tratadistas enfatizan que la ley sólo provee que la hipoteca se extienda sobre la indemnización, pero por ser ésta un seguro monetario, no puede ser hipotecada. Argumentan entonces que se establece una *prenda en dinero.* Roca Sastre y Roca-Sastre Muncunill, *op. cit.,* págs. 577–578; Puig Brutau, *op. cit.,* pág. 134.

Según la figura de la *subrogación real,* el derecho de crédito dinerario o el dinero en sí sustituye o reemplaza —total o parcialmente— la cosa hipotecada. Roca Sastre y Roca-Sastre Muncunill, *op. cit.,* págs. 574. Esta teoría la sigue Santorio Pasarelli, y estudia Pérez González. Chico y Ortiz, *op. cit.,* pág. 1412, rechaza tener que entrar a si la indemnización se da en prenda o forma parte de la hipoteca. Otros piensan que "al quedar sustituido el objeto

---

hipotecado. El legislador escogió beneficiar al acreedor hipotecario, por lo que no se puede interpretar la ley de tal forma que se le pueda exigir al acreedor que renuncie su derecho prioritario sobre la indemnización para que otro cobre. J. Morrell y Terry, *Comentarios a la Legislación Hipotecaria,* 2da ed., Madrid, Ed. Reus, 1928, T. 3, pág. 726.

Campuzano y Horma, *op. cit.,* pág. 153, aunque también piensa que es una injusticia, reconoce que éste es el ordenamiento vigente.

de la garantía por el valor pecuniario de la finca, es evidente que la acción hipotecaria habrá de dirigirse directamente a la efectividad de la cantidad consignada, sin otro límite que el marcado por el importe de la garantía". Cassio y Corral, *op. cit.*, pág. 349.

Finalmente, sabido que como norma general el pacto comisorio está prohibido, cuando el dinero sea el objeto del derecho de prenda, existe una "abreviatura de la realización de valor". No resulta necesaria la subasta. Una vez vencida la obligación, el crédito vencido y no satisfecho podrá hacerse efectivo en el dinero pignorado, a pesar del Art. 1859 español. Art. 1758 de nuestro Código Civil, 31 L.P.R.A. sec. 5003. J.L. Lacruz Berdejo, *Elementos de Derecho Civil: Derechos Reales*, Barcelona, Ed. Bosch, 1980, T. III, Vol. 2, pág. 154. Véase Puig Brutau, *op. cit.*, págs. 25-26.

Ante esta interesante polémica en la glosa científica, favorecemos adoptar en nuestra jurisdicción el curso adjudicativo seguido por el tribunal de instancia, a saber, el acreedor hipotecario puede, *una vez vencida la obligación garantizada*, acreditar la indemnización por siniestro al crédito. Sin embargo, si la obligación garantizada por hipoteca *no* estuviese vencida y el asegurador tuviese conocimiento de la garantía, por mandato del Art. 161 de la Ley Hipotecaria, *supra*, la indemnización se hará en la forma que convenga más a los interesados.(16) En caso de que las partes no llegaran a un acuerdo, se consignará en el tribunal y se tomarán las acciones pertinentes. Esta norma es la que confiere más protección a los acreedores hipotecarios, sin inferir menoscabo o perjuicio sustancial a los derechos del propietario y a sus otros acreedores.

---

(16) Reiteramos el principio rector de la *buena fe* que siempre obliga a los contratantes. *González v. F.S.E.*, 140 D.P.R. 123 (1996). "[T]odo contrato debe tener como pilar principal el principio de la buena fe contractual." *Arthur Young & Co. v. Vega III*, 136 D.P.R. 157, 170 (1994).

En resumen, los Arts. 160 y 161 de la Ley Hipotecaria, *supra,* no imponen al asegurador el deber de investigar o de averiguar si una finca siniestrada está hipotecada. Sin embargo, una vez en conocimiento, si realiza el pago al asegurado en *perjuicio del acreedor hipotecario*, el pago se *considera* mal hecho.

*Se dictará sentencia confirmatoria y se devolverán los autos originales al Tribunal de Instancia para la continuación de los procedimientos.*

El Juez Asociado Señor Rebollo López se inhibió. Los Jueces Asociados Señores Hernández Denton y Corrada Del Río no intervinieron.