# 2009 DTA 127

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**

AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO
Demandante-Apelado

v.

MIDWEST TRADING COMPANY INC., JOHN P. WHITE
Demandado-Apelado

APPEAL INVESTMENTS CARIBE, INC.
Interventor-Apelante

Núm. KLAN-09-00865

San Juan, Puerto Rico, a 14 de septiembre de 2009

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Salas Soler y la Juez Colom García

Salas Soler, Juez Ponente

██

## TEXTO COMPLETO DE LA SENTENCIA

Comparece Appeal Investment Caribe Inc., (Appeal Investment) de la Resolución emitida el 26 de mayo de 2009 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), en la causa Civil Núm. KEF2003-0043, archivada en autos el 27 de mayo de 2009. Mediante dicha Resolución, el TPI resolvió que el fondo de compensación depositado por la expropiación forzosa que originó la referida causa civil, no está sujeta a la reclamación de gravámenes hipotecarios que fueron cancelados luego de comenzado el procedimiento judicial, y debido a que Appeal Investment no era dueña del inmueble al momento de la incautación, no tenía derecho sobre los fondos consignados en justa compensación, pues ese derecho no le podía ser transmitido en calidad de comprador subsiguiente.

Con el beneficio de las comparecencias de Appeal Investment y de la Autoridad de Carreteras y Transportación de Puerto Rico (ACT o apelada), y después de un cuidadoso estudio de los planteamientos, confirmamos la Resolución apelada.

I

**Hechos**

Los hechos que dieron comienzo a esta causa surgieron cuando el 17 de enero de 2003, la ACT presentó petición de expropiación forzosa para la adquisición de las parcelas de terreno 001-01 y 001-002, localizadas en el Barrio Tallaboa Encarnación, del término municipal de Peñuelas. La ACT solicitó la expropiación y consignó $153,630.00 en el tribunal como justo valor de la propiedad. En adición, unió certificación registral de la finca número 2149, expedida el 11 de diciembre de 2002, y de la cual se desprendió que dicho inmueble estaba gravado por:

"a) Hipoteca constituida sobre esta finca y otra no objeto de certificación, en garantía de pagará a favor de Poli-Coop Savings & Loans, o a su orden, por la suma principal de $1,280,000.00, respondiendo la finca número 2149 por la suma de $640,000.00, intereses y otras sumas adicionales, vencedero a 27 de enero de 1999;

b) Hipoteca constituida sobre esta finca y otra no objeto de certificación, en garantía de pagaré a favor de Royal Bank of Puerto Rico, por la suma principal de $219,500.00, respondiendo la finca número 2149 por la suma de $109,750.00, intereses y otras sumas adicionales, vencedero a la presentación;

c) Aviso de demanda en ejecución de la hipoteca constituida a favor de Royal Bank of Puerto Rico;

d) Aviso de demanda en ejecución de la hipoteca constituida a favor de Poli-Coop Savings & Loans;

e) Embargo a favor del ELA, para responder por la suma de $71,139.21 adeudados por concepto de

contribución sobre propiedad inmueble; y

f) Hipoteca constituida sobre esta finca y otra no objeto de certificación, en garantía de pagaré a favor de Frank Electric Services, Inc., por la suma principal de $34,292.00, respondiendo la finca número 2149 por la suma de $17,146.00 intereses y otras sumas adicionales. (Ap., p.3)."

De autos surge que aun cuando del anterior tracto registral surgían todas las partes con interés sobre el bien expropiado, la ACT solamente incluyó como partes con interés a Midwest Trading Company, Inc., (Midwest), representado por el Sr. White como titular de la Propiedad; al ELA, por concepto de contribuciones territoriales; y a John Doe y Richard Roe, para designar a cualquier persona natural o jurídica que pudiera tener interés en la propiedad a expropiarse. El 3 de febrero de 2003, el TPI dictó Sentencia declarando ha lugar la moción del Sr. White, –entonces titular registral de la propiedad–, para que retirara los fondos consignados por la ACT. Varios días después, el 30 de enero de 2003, el TPI emitió Resolución traspasando a la ACT el título de dominio absoluto sobre la propiedad.

Así las cosas, luego de la ACT presentar solicitud de relevo de sentencia y tres enmiendas a la petición de expropiación forzosa con miras a aumentar la cabida a expropiar en la parcela 001-01, consignó las cantidades de $32,280.00 y $13,860.00 correspondientes al valor estimado como justa compensación por el incremento en el terreno expropiado. En adición, la ACT incluyó por primera vez los proyectos de emplazamientos correspondientes a Poli-Coop. Savings & Loans, Royal Bank of Puerto Rico, el ELA y Frank Electric Services, Inc., a cuyos nombres constaban inscritas las cargas en el Registro de la Propiedad.

Mediante Resolución Enmendada de 22 de junio de 2004, el foro de instancia declaró con lugar la enmienda (Ap., p. 6).

En la misma fecha anterior, compareció Martech Enterprises, L.C. (Martech) en solicitud de autorización para intervenir en el caso de epígrafe. En su escrito, declaró haber sido tenedor de dos pagarés suscritos por Midwest a favor de Poli-Coop. Savings & Loans (en primer rango) y Royal Bank of Canada (en segundo rango), garantizados ambos por hipoteca sobre la finca expropiada y de haberlos vendido y traspasado a Appeal Investment (Ap., p.7).

Entretanto, el Sr. White solicitó el retiro de los nuevos fondos consignados y acompañando certificación negativa de deuda en carácter personal.

Subsiguientemente, Martech puso a Instancia en conocimiento de que a la fecha de la presentación de la petición de expropiación, la Corte Federal de Quiebras se encontraba resolviendo una solicitud de quiebras radicada por Midwest el 14 de mayo de 1993.

Así las cosas, el 12 de noviembre de 2004, la ahora recurrente, Appeal Investments, solicitó intervención y sostuvo que había adquirido la propiedad en cuestión de manos de Martech, a quien la Corte de Quiebras le había adjudicado la titularidad de la propiedad expropiada mediante sentencia emitida por esa Corte el 23 de enero de 2003 y confirmada en apelación (Ap. p. 8). Es pertinente mencionar que posteriormente, Appeal Investments sometió evidencia de la cancelación de todos los gravámenes que afectaban la finca en cuestión previo a su venta en pública subasta a Martech el 7 de mayo de 2004 (Ap., p. 9). [1] De las determinaciones hechas por instancia, surge que desde sus inicios la alegación de Appeal Investments ha sido que por ser ésta la última adquirente del inmueble en cuestión, la ACT tiene que pagarle por los terrenos expropiados. *Id.*

Con el propósito de discutir las mociones pendientes, el 3 de febrero de 2005, el TPI autorizó la comparecencia de Appeal Investments y ordenó a Midwest someter certificación de deuda expedida por el Centro de Recaudaciones e Ingresos Municipales (CRIM), así como resolución corporativa de Midwest

otorgándole al Sr. White derecho a comparecer en su representación ante el tribunal. Luego de varias celebraciones de vista, surge que de la Sentencia del 9 de diciembre de 2008, el TPI "pudo constatar que las sumas retiradas a esa fecha [por el Sr. White] fueron obtenidas a nombre de Midwest, según evidenciado por los depósitos en las cuentas de la corporación. De esta suerte, habiéndose allanado las partes a que la suma consignada por la ACT constituye el justo valor del la propiedad, quedó pendiente lo relativo a la distribución de los fondos." (Ap., p.10).

Ante estas determinaciones, el TPI, apoyado en los escritos de las partes y la documentación sometida, dictó la Resolución de la que aquí se recurre, estableciendo las determinaciones que a continuación resumimos:

"1. Que de la certificación registral sometida por la ACT, con fecha de 11 de diciembre de 2002, se desprende que previo a la segregación de la parcela expropiada, la finca 2149 se hallaba afectada en primer rango por hipoteca constituida en garantía de pagaré a favor de Poli-Coop Savings & Loans y, en segundo rango, por hipoteca en garantía de pagaré a favor de Royal Bank of Puerto Rico, *Id.*

2. Que aunque la ACT no había acumulado a estos acreedores como demandados, la Corte de Quiebras había ordenado mandamiento requiriéndole al Registrador de la Propiedad cancelar todo derecho que gravara el inmueble, por lo que los gravámenes a favor de éstos habían sido cancelados previa la presentación de la petición de expropiación, según confirmaba la documentación, *Id.*

3. Que no era "razonable que el fondo de compensación esté sujeto a la reclamación de gravámenes hipotecarios que fueron cancelados durante el procedimiento judicial." (Ap., p.12).

4. Que "en lo que concierne a la creencia de Appeal Investment de que adquirió la finca número 2149 según su descripción registral previo a la segregación de la parcela incautada por la ACT, basta con mencionar que habiéndose presentado la declaración de adquisición y depositado en el tribunal la compensación, por disposición de la Ley de Expropiación Forzosa el título absoluto de dominio del predio segregado, parcela 001-01, quedó investido en la ACT, **sin necesidad de ulterior procedimiento.** 32 L.P.R.A. § 2907." (Ap., p.13).

5. Que sobre el derecho de Appeal Investment sobre los fondos consignados en compensación por el terreno expropiado, al Estado ejercer de forma directa su poder de dominio a través de una acción de expropiación, "**la compensación va a la persona que era dueña al momento de la incautación y ese derecho a ser remunerado no se transmite a un comprador subsiguiente**." Véase: *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001); *Danforth v. United Status*, 308 U.S. 271, 284 (1939); *United States v Dow*, 357 U.S. 17, 22 (1958)." (Ap., p. 13).

Por tales motivos, instancia aplicó la doctrina sentada por nuestro Tribunal Supremo en *Autoridad de Carreteras v. Iñesta Nazario*, 165 DPR 891 (2005), para exponer que Appeal Investments, como titular de propiedad expropiada, no poseía derecho de garantía real sobre el inmueble en cuestión y no tiene derecho a litigar justa compensación de un crédito personal en la sala especializada de expropiaciones. En consecuencia, Instancia le recomendó a Appeal Investment reclamar de Midwest el monto total de la obligación mediante la acción personal en cobro de dinero "siempre que: 1) el resultado de la venta judicial de la finca hipotecada haya alcanzado para cubrir la totalidad de la deuda, y 2) la obligación personal no haya sido cancelada." *Id.*

Como determinación final, el TPI determinó que tanto Martech como su cesionario Appeal Investments "carecen de derecho para ser compensados por la ACT por la incautación de los 11,457.442 metros cuadrados segregados de la finca número 2149 al 11 de septiembre de 2003, pues dicha afectación existía a la fecha en que Martech adquirió por venta judicial el remanente de la finca del cual se segregaron." *Id.*

Inconforme con la determinación hacha por el TPI, Appeal Investments acudió en Apelación el 26 de junio

de 2009, solicitando la revocación de la Resolución dictada por el TPI y señalando ocho los errores cometidos por el foro de Instancia:

"a. ERRÓ el Tribunal al determinar que el caso de epígrafe es similar a lo resuelto en caso de *A.C.T. v. Iñesta*, 165 D.P.R. 891 (2005).

b. ERRÓ el Tribunal al determinar que late [sic] interventora y su antecesora no tenían derecho a que se le notificara del procedimiento de expropiación.

c. ERRÓ el Tribunal al no considerar la defensa levantada por la parte interventora en cuanto el pago a persona indebida según el caso *Eagle Star Insurance Co. of Puerto Rico v. La Esperanza Sugar Plantation*, **98 J.T.S. 42**.

d. ERRÓ el Tribunal al no considerar en su resolución que la parte demandante apelada y la Secretaría del Tribunal habían violado la Ley de Contabilidad del Gobierno de Puerto Rico, Ley Núm. 230 de 23 de julio de 1974, al realizar el desembolso de los dineros consignados a John P. White.

e. ERRÓ el Tribunal al no ordenar a la Autoridad de Carreteras el pago a la interventora Appeal Investments Caribe, Inc. el dinero retirado por John P. White, según relacionado en la resolución apelada (Exhibit A)

f. ERRÓ el Tribunal al no ordenar a John P. White o a Midwest Trading Company, Inc., la devolución de los fondos retirados correspondientes al pago de las contribuciones territoriales, que tuvieron que ser pagado por el interventor Appeal Investments Caribe, Inc.

g. ERRÓ el Tribunal al no determinar que Midwest Trading Company, Inc. era una corporación inexistente y era un alter ego de John P. White.

h. ERRÓ al Tribunal al no determinar que los fondos provenientes de la expropiación correspondía a depositarse en el procedimiento de quiebra caso 93-02511 (ESL) el cual fue consolidado con el caso 93-01159 (ESL)."

Considerando el beneficio que nos ofrece el tener la posición de ambas partes, y a la luz de la jurisprudencia, procedemos a resolver la controversia aquí presentada.

## II
**Exposición y análisis**

Como cuestión de arrancada debemos señalar que estamos ante una petición de *Certiorari*, conforme al Art. 4.006(b) de la Ley de la Judicatura de 2003, Regla 53.1 (e) (1), 32 L.P.R.A. Ap. III, R. 53.1(e) (1). Aquí se recurre de una resolución de Instancia en la que dirimió los derechos de Appeal Investment en relación con los fondos consignados. Regla 32 (D) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B.

Advertimos a Appeal Investments que incumplió con las Reglas de este Tribunal, al no incluir en sus anejos la Demanda original con la que se inició el recurso de expropiación forzosa. Regla 16(E), Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A. La conducta del apelante al omitir documentos pertinentes en el anejo podría inducir a error al Tribunal, además de que no nos coloca en óptima posición para dirimir el caso con todos los documentos necesarios, lo que también dificulta y retrasa nuestra labor.

Por estar íntimamente relacionados entre sí, procederemos a consolidar la discusión de los errores señalados.

Ya hemos reiterado que el Tribunal Supremo ha expresado que el poder de expropiación del Estado es un atributo inherente a su poder soberano y de superior jerarquía a todos los derechos de propiedad. *E.L.A. v. Sucesión*, 166 D.P.R. 700 (2006); *ACT P.R. v. 780614m2, BPPR*, 164 D.P.R. 740 (2005); *ELA v. Registrador*, 111 D.P.R. 117 (1981); *ELA v. Rosso*, 95 D.P.R. 501, 536 (1967). Dicha facultad exige para su ejercicio el pago de la justa compensación y que el proceso se lleve a cabo conforme dispone la Ley de Expropiación Forzosa, Ley del 12 de marzo de 1903 según enmendada, 32 L.P.R.A. secs. 2901 *et seq*. Véase, Art. II, Sec. 9 Constitución del Estado Libre Asociado de Puerto Rico; Art. 282 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1113; *ACT P.R. v. 780614m2, BPPR, supra*. Una vez presentada la declaración de adquisición y consignado el importe estimado como justa compensación, "el Gobierno es investido del título" sobre la propiedad. *Pueblo v. 632 Metros Cuadrados de Terrenos, supra*, 74 D.P.R. 961 (1953), 970-71.

El procedimiento judicial de expropiación forzosa es uno de naturaleza civil; es un procedimiento *in rem*. Se lleva a cabo conforme dispone la Ley de Expropiación Forzosa, *supra*, y la Regla 58 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 58. *A.C.T. v. Iñesta*, 165 D.P.R. 891 (2005); *Autoridad de Carreteras y Transportación v. Adquisición de 780 Metros Cuadrados de Terrenos, supra*, Véase, también, J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, **Publicaciones J.T.S.**, 2000, Tomo II, pág. 1074, y no va dirigido contra ningún demandado en particular, sino contra la propiedad. Si bien el ejercicio de poder de expropiar extingue todos los derechos anteriores sobre la propiedad, el Gobierno no expropia el interés que pueda tener ningún demandado en particular sobre la propiedad. *Pueblo v. McCormick, Alcalde & Co.*, 78 D.P. R. 939, 950 (1956). Es un requisito constitucional y estatutario que al iniciar un procedimiento de expropiación forzosa se incluya y notifique al dueño de la propiedad así como a las demás personas con derecho o interés sobre la misma. *E.L.A. v. Registrador, supra*, a la pág. 122. Es por este motivo que no se puede desestimar un recurso de expropiación por ausencia de parte indispensable, ni mucho menos privar de jurisdicción al tribunal para transferir el título al Estado. *E.L.A. v. Registrador, supra*; C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure*, West Pub., 1997, Vol. 12, sec. 3045, pág. 203 ("since the proceeding is *in rem*, there are no indispensable parties; the failure to join a party does not defeat the condemnor's title.")

La Regla 58.3 de las Reglas de Procedimiento Civil específicamente provee que al instituirse el pleito, "el demandante solamente tendrá que acumular como demandados aquellas personas que tengan o reclamen un derecho en la propiedad cuyos nombres a la sazón se conozcan." Por otro lado, la Regla ordena también que, antes de cualquier vista para determinar la compensación que ha de pagarse por la propiedad, el demandante acumulará como demandados todas las personas que tengan o reclamen un derecho en dicha propiedad, cuyos nombres puedan ser conocidos mediante diligencia razonable en el Registro de la Propiedad, *A.C.T. v. Iñesta, supra*. En esta referida jurisprudencia, el Tribunal Supremo añadió que el incumplimiento con el deber de acumular como demandados a todas las personas que tengan o reclamen un derecho en dicha propiedad, cuyos nombres puedan ser conocidos mediante diligencia razonable en el registro de la propiedad, "no hace ineficaz el traspaso del título de dominio absoluto del expropiante, pero la parte no incluida podría tener derecho a ser compensada". *Id*.

En lo pertinente a la petición de expropiación forzosa, la Ley de Expropiación Forzosa, *supra*, dispone que ésta tiene que ser presentada en el tribunal, y el peticionario o demandante podrá incluir una declaración y entrega material de la propiedad objeto de expropiación, firmada por la persona autorizada en ley para la expropiación correspondiente. En ésta, se debe hacer constar que la propiedad que se pretende adquirir para el uso del Estado Libre Asociado de Puerto Rico o para alguna agencia o entidad gubernamental, así como también el uso específico para el que se destinará la misma. 32 L.P.R.A. sec. 2907.

De ordinario, la petición de expropiación forzosa viene acompañada con un legajo de expropiación en el cual se incluye, *entre otros documentos*: el Exhibit A, Exhibit B, la Moción y la Declaración para la Adquisición y Entrega Material, Proyecto de Resolución, Certificación Registral de la Propiedad y la Resolución de la Junta de Planificación o de ARPE aprobando la consulta de ubicación o construcción de

proyecto, *supra*.

Por otra parte, el Artículo 38 de la Ley Hipotecaria, 30 L.P.R.A. 2201, establece qué títulos se inscribirán en los registros de la propiedad. Entre éstos están, los títulos traslativos o declarativos del dominio de los inmuebles, o de los derechos reales impuestos sobre los mismos. El título que se adquiere mediante expropiación forzosa, en el ejercicio del poder de dominio eminente del Estado es un nuevo título que no transmite derecho alguno de los anteriores dueños o personas con interés en los inmuebles objeto de la expropiación, sino que declara que el expropiante adquiere un nuevo título, absoluto contra todo el mundo, quedando cancelados e inexistentes todos los demás derechos que sobre la propiedad expropiada pudieran tener otras personas. *Servicio de Acueductos y Alcantarillados de Puerto Rico v. Registrador*, 70 D.P.R. 232, 238 (1949); *Duckett & Co. v. United Sates*, (1924), 266 U.S. 149, 69 L.ed. 216; *Emery v. Boston Terminal Co.*, 178 Mass. 172, 59 N.E. 763. La anterior decisión se amparó en jurisprudencia norteamericana que estima que el Estado adquiere, no de manera derivativa, sino por título nuevo e independiente porque el procedimiento de expropiación forzosa va dirigido contra el inmueble mismo. Rivera, Luis R., *Derecho Registral Inmobiliario Puertorriqueño*, Jurídica Editores 2ed. (2002), p. 235.

Hemos tomado constancia de la Petición y la Declaración para la Adquisición y Entrega Material de la Propiedad (Escrito de la apelada, págs. 10-12) y la Resolución expedida el 30 de enero de 2003 concediendo la entrega material de la propiedad en cuestión, *Idem*, págs. 12-14. A través de éstas surge que al momento de la radicación del procedimiento de Expropiación Forzosa, la ACT advino dueña del predio. De conformidad con el Art. 27 de la Ley Hipotecaria, las certificaciones expedidas por los registradores de la propiedad son documentos públicos que hacen fe por sí mismos, 30 L.P.R.A. 2105, y mediante éstos se podrá acreditar en perjuicio de terceros la existencia o ausencia de gravámenes sobre bienes inmuebles, Art. 28 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2106, pues precisamente la mejor evidencia para poder ejecutar un derecho hipotecario es el propio derecho inscrito. *Pueblo v. Ocean Park Development*, 73 D.P.R. 360 (1952).

Por lo que entendemos, no erró el TPI al aplicar la norma prevaleciente en nuestra jurisdicción, al resolver que Appeal Investment no está sujeta a cobrar del fondo de compensación debido a que ese derecho se le confiere al titular del inmueble al momento de la incautación ("taking"), y no se transmite a un comprador subsiguiente, lo que a través de los hechos probados, resulta ser Appeal Investment. Ello es así por razón de que con el "taking", la parte del inmueble así afectada pasa de inmediato a ser propiedad del estado, por lo que cualquier venta posterior de la propiedad remanente no habrá de incluir la parte que había sido antes expropiada. Por ende, tampoco erró Instancia al validar el cobro de la consignación hecha por el Sr. White y el depósito del dinero en la cuenta bancaria de la corporación Midwest Trading Co., Inc. Según las determinaciones de hechos de Instancia y la Certificación Registral, éste es el dueño titular del predio al momento de ocurrir el "taking".

No podemos estar de acuerdo con el señalamiento del Error "c". La doctrina del pago de lo indebido no aplica en procedimientos de expropiación forzosa como el que atendemos, pues la ACT no emitió pago a ningún ente particular, sino que consignó en el tribunal la justa compensación. Según provee la Ley de Expropiación Forzosa, una vez la ACT presenta ante el tribunal el procedimiento de expropiación forzosa y consigna la justa compensación correspondiente, "tal propiedad deberá considerarse como expropiada y adquirida para el uso del Estado Libre Asociado de Puerto Rico o Gobierno Estatal, o de la agencia... según fuere el caso...". 32 L.P.R.A. § 2907. El litigio, si alguno, será respecto a cómo dividir el dinero entre los realmente interesados en el inmueble.

Appeal Investments también alega que el TPI debió haber considerado por analogía la doctrina de pago a persona indebida, sentada en *Eagle Star Insurance Co. of Puerto Rico v. La Esperanza Sugar Plantation*, 145 D.P.R. 290 (Eagle Star). Sin embargo, en aquel caso no se consignaba pago conforme la Ley de Expropiación Forzosa, por lo que las consideraciones de derecho allí tomadas, como la situación fáctica de aquel caso se

distinguen de- esta causa. En Eagle Star, *supra*, la compañía aseguradora expidió cheque a- la dueña de la propiedad (La Esperanza), pero no incluyó al acreedor hipotecario (Banco Gubernamental) a sabiendas de que éste existía. De este modo, el Tribunal Supremo, amparándose en el Artículo 116 del Código Civil, decidió que la compañía aseguradora había pagado equivocadamente. **[2]**

Appeal Investment arguye que Midwest no podía hacer el cobro de la justa compensación, pues tenía deuda de $405,601.31 en concepto de contribuciones territoriales con el CRIM, lo que ocasionó que Appeal Investment tuviera que pagar $92,216.70 en contribuciones del terreno expropiado (Escrito de la apelante, p. 6 y Ap., p. 32). No le asiste la razón. Por un lado, la ACT sólo tenía la obligación de depositar la justa compensación, correspondiente al valor en el mercado de la propiedad expropiada como si ésta estuviera libre de cargas y gravámenes, ya que cuando el Estado ejerce su poder soberano de expropiación, extingue todos los derechos anteriores sobre la propiedad. Habida cuenta de lo anterior, la inscripción de dominio a favor del Estado se hizo libre de todo gravamen. Por otro lado, al momento de Appeal Investments adquirir el remanente de la propiedad embargada de manos de Mertech –con la creencia de que con la titularidad del remanente del inmueble le correspondería la compensación del procedimiento de expropiación forzosa–, sólo advino dueño del **remanente** del predio expropiado y está obligado a cumplir con las cargas que todavía pesan sobre el remanente, incluyendo, naturalmente, aquellas cargas preferenciales como son las contribuciones territoriales del CRIM. Aclaramos que de acuerdo a los tres recibos de pago emitidos por el CRIM incluidos por Appeal Invesments en el expediente, surge que ésta pagó un total de $75,496.98. **[3]**

De autos surge que en la vista ante el TPI el 3 de febrero de 2005, se autorizó la comparecencia de Appeal Investments conforme su solicitud de intervención y se ordenó a Midwest someter certificación de deuda expedida por el CRIM (Ap., p. 9). Aunque no contamos en nuestro expediente con prueba de la certificación de deuda del CRIM al momento del Sr. White y su corporación Midwest ser titulares del inmueble, de las determinaciones de hechos del TPI, el Estado de la Cuenta #01518122 del inmueble en el CRIM (Ap., p. 33) y del recibo de pago emitido por esta institución el 23 de diciembre de 2004 por la cantidad de $22,839.48 (Ap., p. 36), surge que la suma adeudada al CRIM comenzó a partir del 7 de enero de 2003. Para esta fecha, Martech era la dueña del inmueble, pues el 23 de enero de 2003, la Corte de Quiebras emitió sentencia en el caso Núm. 93-02511(ESL) y conforme a solicitud de Martech le otorgó la titularidad del inmueble por ser ésta la tenedora de dos pagarés garantizados con la finca expropiada. Por lo que con la documentación sometida por la apelante, no podemos llegar a la conclusión de que las contribuciones territoriales del CRIM debían ser pagadas por Midwest.

Por los fundamentos anteriormente expresados, se expide el auto de *Certiorari* solicitado y se confirma la Resolución recurrida.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2009 DTA 127

**1.** De las determinaciones hechas por el foro de instancia surge que Appeal Investment sometió porción de una certificación registral de la finca 2149 el 29 de julio de 2006, y de donde surgía que el 23 de enero de 2003, la Corte de Quiebras declaraba vencida la deuda de Midwest y autorizaba la venta judicial del inmueble.

**2.** Más específicamente, en este caso, el Tribunal resolvió que si bien los Artículos 160 y 161 de la Ley Hipotecaria de 1979, 30 L.P.R.A. § 2556-57 (1993), no imponen al asegurador el deber de investigar o averiguar si un inmueble siniestrado está hipotecado, una vez es notificado de ello, "si [el asegurador] realiza el pago [de la indemnización] al asegurado en perjuicio del acreedor hipotecario, el pago se considera mal hecho." En consecuencia, el asegurador deberá

responderle al acreedor hipotecario. Según el Tribunal, bajo los referidos artículos, lo que es determinante es que el asegurador haya sido notificado o tenga conocimiento, aunque sea *motu proprio*, de la existencia de la hipoteca sobre el inmueble asegurado. Por lo tanto, corresponde al "acreedor interesado defender su derecho prioritario, y justificar y vigilar sus derechos sobre tales indemnizaciones."

**3.** Dicho total surge de los tres recibos de pago de 23 de diciembre de 2003, el primero de $30,401.60 (Ap., p. 35); el segundo de $22,856.47 (Ap., p. 36) y el tercero de $22,238.91 (Ap., p. 38), para un total de $75,496.98.