Estado Libre Asociado de Puerto Rico, peticionario, *v.* Sucesión Damián Planas Parrilla, recurrida.

*Número:* CC-2004-1105      *Resuelto* 11 de enero de 2006

*Roberto J. Sánchez Ramos,* procurador general, y *Camelia Fernández Romeo,* procuradora general auxiliar, abogados de la parte peticionaria; *Damián Planas Parrilla,* abogado de la parte recurrida; *Xavier Planas Merced,* por derecho propio.

## SENTENCIA

El 24 de octubre de 2002 el Estado Libre Asociado de Puerto Rico, a nombre y para beneficio de la Autoridad de Energía Eléctrica (la Autoridad), presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una petición de expropiación para adquirir una servidumbre real y perpetua sobre cierto predio de terreno con cabida superficial de 4,406.9032 metros cuadrados, sito en el Barrio Quebrada Grande del municipio de Trujillo Alto. La finca principal sobre la cual discurrirá la servidumbre tiene una cabida de 4.25 cuerdas y, sobre la misma, discurre ya otra servidumbre del tendido eléctrico a favor de la Autoridad.

Se informó en la petición que la servidumbre era necesaria para el desarrollo del proyecto de obra pública de la Autoridad denominado "Línea 230KV, Sabana Llana, Yabucoa", conocido como Lazo del Este (Proyecto o Lazo del Este). A esos fines, se instalarán sobre el predio de terreno

por donde discurrirá la servidumbre los conductores eléctricos, las estructuras y los postes necesarios para la línea eléctrica. Este proyecto tiene como propósito mejorar el suministro de energía eléctrica en el este de Puerto Rico. En la petición de expropiación se indicó que la cantidad de $32,390 constituía la justa compensación por el derecho real y perpetuo de servidumbre a ser adquirido. Esta cantidad fue consignada por el Estado en la Secretaría del tribunal. La petición fue notificada a la parte con interés, la Sucesión Damián Planas Parrilla (Sucesión Planas), compuesta por la Dra. Virginia Planas Merced, el Lcdo. Damián Planas Merced, Xavier Planas Merced y Norma Planas Merced.

El 1 de noviembre de 2002, el Tribunal de Primera Instancia dictó una resolución que traspasó la titularidad de la servidumbre al Estado Libre Asociado de Puerto Rico. El 26 de febrero de 2003 el Lcdo. Damián Planas Merced, por derecho propio, presentó una oposición a la petición de expropiación. En el escrito presentado se indicó que objetaba la expropiación porque, alegadamente, era improcedente e injusta, y constituía una confiscación indebida de la propiedad al impedir todo uso razonable y efectivo de su finca, además de ser innecesaria. Sostuvo que la ubicación de las torres y los cables del tendido eléctrico en el área expropiada colocarían a dicho predio y a la residencia que allí ubica en posición desventajosa, ya que estaría totalmente rodeado de cables de alta tensión porque desde el 1973 la finca está afecta con otra servidumbre a favor de la Autoridad. Se indicó que la alineación del proyecto original Lazo del Este había sido variada para favorecer a un ex empleado de la Autoridad, ya que en los planos originales el tendido eléctrico no discurría sobre la propiedad de la Sucesión Planas, sino sobre la de este ex empleado. La oposición presentada cuestionaba el fin público de la expropiación. Finalmente, se indicó que de proceder la expropiación, se debía expropiar la totalidad de la finca.

En esa misma fecha, el licenciado Planas presentó también una solicitud de *injunction* preliminar y permanente dentro del procedimiento de expropiación. En el *injunction* se solicitó, entre otras cosas, la paralización de los trabajos que realizaba la Autoridad en el área hasta tanto el Tribunal de Primera Instancia celebrara una inspección ocular del lugar. Reprodujo en la petición de *injunction* los argumentos esgrimidos en su oposición a la petición de expropiación. El tribunal de instancia señaló una vista para el 18 de marzo de 2003 para discutir la moción presentada por el licenciado Planas. Además, señaló otra vista para discutir la justa compensación.

Posteriormente, el 11 de marzo de 2003, el licenciado Planas presentó una petición en la cual solicitó que se citara a la vista pautada para el 18 de marzo a varios funcionarios de la Autoridad, entre ellos, su Director Ejecutivo y los Ings. Ramón Rodríguez Fonseca y Eduardo Gotilla, empleados de la Autoridad. El tribunal accedió a lo solicitado.

La vista se celebró y comparecieron los funcionarios de la Autoridad, mas no su Director Ejecutivo. El licenciado Planas no utilizó los testigos citados. En la vista, el licenciado Planas impugnó el fin público de la expropiación y solicitó que se dejara sin efecto la resolución del tribunal que traspasaba la titularidad de la servidumbre al Estado Libre Asociado. El tribunal declaró "sin lugar" dicha solicitud y quedó por resolver si se paralizaría la entrega material de la propiedad. Se le concedió un término al Estado para que se expresara sobre el particular.

El 1 de abril de 2003 el licenciado Planas y su hermano Xavier Planas Merced, quien compareció por primera vez, presentaron una moción de relevo de sentencia y remedio urgente en la cual, fundamentalmente, reiteraron sus planteamientos anteriores. El tribunal determinó que nada tenía que proveer con respecto a la moción de relevo

de sentencia y remedio urgente. Añadió en su resolución que había una vista pautada para el 29 de abril de 2003 y que en ésta se consideraría la impugnación del fin público.

El 17 de abril de 2003 el licenciado Planas y su hermano solicitaron que se citara a seis funcionarios de la Autoridad a la vista pautada para el 29 de abril, incluso nuevamente al Director Ejecutivo. Se adujo que ello era necesario para resolver la controversia ante la consideración del foro primario. El Estado Libre Asociado presentó sendas mociones en oposición a la impugnación del fin público y la citación de testigos, y solicitó del tribunal que proveyera un "no ha lugar" a ambas mociones.

Posteriormente, el Estado presentó una nueva moción en la cual discutió más a fondo el asunto relativo al fin público. Indicó que la determinación de por dónde debe discurrir la servidumbre sólo compete a la Autoridad por ser ésta el organismo público con conocimiento administrativo pericial necesario para hacer tal determinación. Se señaló en el escrito presentado que la decisión de la Autoridad de expropiar una servidumbre en la finca de la Sucesión Planas respondió a que esa era la ruta de menor impacto económico y social, pues utilizar la ruta original conllevaba afectar un número mayor de residencias, incluso el desalojo de personas.

La vista del 29 de abril se celebró, y en esa fecha el tribunal de instancia pautó una nueva vista para el 10 de junio para continuar con la discusión sobre el fin público.

El 2 de mayo el licenciado Planas presentó una moción en la cual solicitaba que el Estado le suministrara todo documento, estudio, análisis y evaluación, así como planos, propuestas, certificaciones y aprobaciones, tanto del proyecto original como de la ruta alterna, con el propósito de examinarlos y utilizarlos para contestar y replicar adecuadamente al escrito presentado por el Estado. Ese mismo día presentó, además, una moción urgente para una inspección ocular.

El 14 de mayo de 2003 el Estado replicó. En su escrito se opuso a la citación de la mayoría de los testigos que pretendía utilizar el licenciado Planas. El Estado adujo que sus testimonios eran impertinentes, pues no habían participado en la decisión sobre la ubicación del Proyecto. En relación con otras dos personas citadas por el licenciado Planas, se informó que éstas iban a ser utilizadas por el Estado como sus testigos, pues eran empleados de la Autoridad con conocimiento de los hechos que dieron base a la determinación de la ubicación de la servidumbre en controversia.

El Tribunal de Primera Instancia declaró "no ha lugar" a la solicitud de citación de testigos presentada por el licenciado Planas. El foro primario concluyó que en un procedimiento de expropiación el demandado no podía iniciar un descubrimiento de prueba dirigido a obtener información para sostener su alegación de que la expropiación era caprichosa y arbitraria. El tribunal también denegó la petición de descubrimiento de prueba presentada.

Inconforme, los recurridos solicitaron una reconsideración. Sostuvieron que el Estado Libre Asociado había obrado en fraude al tribunal, con mala fe y que la expropiación presentada no tenía un fin público real, pues pretendía beneficiar a un ex funcionario de la Autoridad. Arguyeron que tenían derecho a utilizar los mecanismos de descubrimiento de prueba que fueran necesarios para defender sus intereses.

Paralelamente, el 9 de junio de 2003 el licenciado Planas Merced y su hermano Xavier Planas presentaron una demanda de *injunction* preliminar y permanente, daños y perjuicios, y fraude contra el Estado Libre Asociado, la Autoridad, su Director Ejecutivo y varios otros funcionarios de la Autoridad. En la demanda se reprodujeron los argumentos de fraude y colusión esgrimidos en el procedimiento de expropiación.

El 19 de junio de 2003, en el pleito de expropiación, el tribunal dictó una resolución en la cual declaró "no ha lugar" a la reconsideración presentada. El foro de instancia concluyó que la impugnación del fin público era improcedente, pues surgía del expediente que se expropiaba para el desarrollo del proyecto Lazo del Este, cuyo propósito era mejorar el suministro de energía eléctrica en el noreste de Puerto Rico. Puesto que éste era un fin público válido, no le correspondía al tribunal cuestionarlo. De la misma forma, no era función del tribunal determinar por dónde debía discurrir ese tendido eléctrico. El tribunal expuso que la jurisprudencia de este Tribunal había permitido la impugnación de los bienes a expropiarse cuando la selección había sido patentemente arbitraria, caprichosa o irrazonable, o cuando hubiera mediado fraude o mala fe, y ello sólo en aquellas circunstancias en que el Estado había delegado su facultad de expropiación en entidades privadas dedicadas a fines públicos. En este caso ello no había ocurrido, ya que quien expropiaba era el propio Estado para beneficio de la Autoridad, una corporación pública.

Indicó, además, que el descubrimiento de prueba estaba disponible para medir lo adecuado de la compensación, lo que no se dilucidaba en este momento. Concluyó que ninguna de las personas a las que se pretendía citar podría aportar información significativa adicional para la resolución de la controversia de fin público, ya que esa determinación fue tomada por el Estado, o por la agencia con dicha facultad, y debía ser respetada por el tribunal.

Inconformes, el 22 de julio de 2003 los recurridos acudieron ante el Tribunal de Apelaciones en solicitud de *certiorari*. Allí reiteraron los planteamientos esgrimidos ante el foro primario. La petición de *certiorari* fue acompañada con una moción en auxilio de jurisdicción, en la que se solicitaba que se paralizara la vista pautada ante el foro primario en la cual se dilucidaría la impugnación del fin

público así como sus alegaciones de fraude, mala fe y arbitrariedad. El Tribunal de Apelaciones, ese mismo día, expidió el auto solicitado.

El 26 de agosto —y notificada el 3 de septiembre de 2004— el Tribunal de Apelaciones dictó una sentencia que revocó la determinación del foro primario. El tribunal resolvió que procedía el descubrimiento de prueba solicitado por los miembros de la sucesión para impugnar el fin público. En la sentencia, el foro apelativo concluyó que cuando se expropia para una corporación pública, el estándar de deferencia debida por el tribunal en cuanto a la revisión de la determinación de fin público es menor o más atenuado que cuando quien expropia es el Estado o una de sus instrumentalidades.

El foro apelativo intermedio indicó en su sentencia lo siguiente:

> [E]l caso ante nos trata de una expropiación iniciada por el ELA a instancias de la AEE, corporación pública que goza esencialmente de elementos de una entidad privada. Es decir, no estamos ante una expropiación emprendida por una clásica instrumentalidad pública, que no posee personalidad jurídica propia y cuya identidad se funde con la propia identidad del Estado. ... Habida cuenta de que la AEE posee una estructura operacional y financiera característica de una corporación privada y desvinculada a la del ELA, no podemos impregnar sus decisiones con la "inmunidad" que revisten las decisiones tomadas por una instrumentalidad enteramente pública, o sea, por el Estado. ... Es por ello que entendemos que, en el caso particular ante nuestra consideración, la existencia de un fin público debe ser objeto de especial consideración, y no debe ser despachada ligeramente con una simple alegación en la Petición y un plano del proyecto. Apéndice de la Petición de *certiorari*, págs. 25–26.

El foro apelativo intermedio determinó que los recurridos tenían derecho a impugnar "el propósito detrás de la expropiación de la finca", para lo cual se debía celebrar una vista evidenciaria en la cual se presente la prueba que se

estime apropiada y el foro de instancia pueda tomar una decisión informada sobre el particular. Por lo tanto, revocó la decisión del tribunal primario y devolvió el caso a dicho foro para la celebración de la vista correspondiente.

Inconforme, el Estado Libre Asociado acudió ante nosotros en una petición de *certiorari*. En el recurso instado se señaló como error el siguiente:

> Erró el Honorable Tribunal de Apelaciones al ordenar la celebración de una vista para determinar si la expropiación sirve un fin público, y al permitir descubrimiento de prueba al respecto, cuando: (i) la propia parte con interés ha admitido expresamente que no impugna el fin público de la expropiación, (ii) como cuestión de hecho no controvertido, la expropiación de la servidumbre se realizó para realizar un proyecto de alto interés público dirigido a fortalecer el suministro de energía en el sureste de Puerto Rico[,] y (iii) las alegaciones de la parte con interés, respecto a la selección de su finca (en vez de otra) no inciden sobre el fin público de la expropiación, por lo cual dichas alegaciones carecen de pertinencia jurídica en este contexto y, por ello, no procede la celebración de vista alguna para dilucidar la veracidad de las mismas. Petición de *certiorari*, pág. 12.

El 4 de marzo de 2005 expedimos el recurso instado. Ambas partes comparecieron con sus respectivos escritos. El caso quedó sometido ante nuestra consideración el 3 de julio de 2005.

Así las cosas, el 10 de agosto de 2005, pendiente el caso ante nuestra consideración, el Hon. Carlos Cabán García, Juez Administrador de la Región Judicial de San Juan, presentó ante este Tribunal un escrito titulado "Comparecencia especial", en el que llamó la atención del Tribunal sobre un posible conflicto entre las disposiciones de la Ley de Expropiación Forzosa de 1903 (32 L.P.R.A. sec. 2901 *et seq.*) y la Regla 20(e) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A.

En su comparecencia, el Hon. juez Cabán García informó que el 27 de enero de 2005, estando pendiente de consideración ante nosotros la petición de *certiorari* pre-

sentada por el Estado, el Tribunal de Primera Instancia, a solicitud del Estado, emitió una resolución y orden que autorizaba la entrega material de la servidumbre y ordenaba al Alguacil del Tribunal que diligenciara y ejecutara la orden. A esos efectos, el 31 de enero se emitió el correspondiente mandamiento. Informó que el Estado, entonces, solicitó de la Oficina del Alguacil, con posterioridad a que expidiésemos este recurso de *certiorari*, el diligenciamiento y la ejecución de la Resolución y Orden de 27 de enero de 2005.

El Hon. juez Cabán García indicó en su escrito que la Ley de Expropiación Forzosa de 1903 establece que ningún recurso de apelación en una causa de esta naturaleza tendrá el efecto de evitar o demorar la adquisición o investidura del título de las propiedades por el Estado Libre Asociado y su entrega material. 32 L.P.R.A. sec. 2907. La ley dispone que en casos de apelación ante el Tribunal Supremo, la entidad que haya promovido la expropiación podrá tomar posesión de la propiedad expropiada. 29 L.P.R.A. sec. 2913.

Por otro lado, La Regla 20(e) del Reglamento del Tribunal Supremo, *supra*, dispone que la expedición del auto de *certiorari* suspenderá los procedimientos ante el Tribunal de Apelaciones y el Tribunal de Primera Instancia, "salvo orden en contrario expedida por este tribunal *motu proprio* o a solicitud de parte".

De acuerdo con lo anterior, y ante el posible conflicto entre las anteriores disposiciones relacionadas con la autoridad para continuar el trámite del caso ante el tribunal de instancia, el Hon. juez Cabán García compareció ante este Tribunal "a los fines de que el Tribunal Supremo disponga lo que proceda".

El pasado 11 de agosto le concedimos a las partes un término simultáneo de diez días para que expresaran lo que a bien tuvieran respecto a la comparecencia especial del juez Cabán García. Ambas partes comparecieron y ex-

presaron su disconformidad con el curso de acción tomado por el honorable Cabán García. El escrito presentado por los recurridos, a través del señor Planas, es altamente ofensivo en tono, lenguaje y contiene insinuaciones injustificadas que cuestionan las motivaciones del magistrado de instancia. *Dicho escrito merece nuestra censura y alto reproche.*

Evaluado los escritos presentados, el expediente ante nuestra consideración, así como el expediente del Tribunal de Primera Instancia, pasamos a resolver.

## I

El recurrido en este caso ha impugnado la expropiación de una servidumbre real y perpetua a discurrir sobre su finca bajo el fundamento que esta expropiación no persigue un fin público. Lo cierto es, sin embargo, que su cuestionamiento va dirigido más que nada a impugnar la selección del lugar por donde habrá de discurrir la servidumbre. Aduce que la alineación escogida para el tendido eléctrico no es la más idónea. Indicó que la alineación original se varió para beneficiar a un ex empleado de la Autoridad porque originalmente se consideró una ruta que llevaría el tendido eléctrico sobre la propiedad de esta persona. Planteada la controversia en estos términos, en rigor, ésta no presenta un problema de fin público.

A. Recientemente, en *A.C.T. v. 780.6141m²*, 165 D.P.R. 121 (2005), tuvimos ocasión de expresarnos sobre la naturaleza y el alcance del poder de expropiación forzosa del Estado. Allí nos reiteramos en que esta prerrogativa es una facultad inherente al poder soberano del Estado y, como tal, superior a todos los derechos de propiedad. *E.L.A. v. Registrador*, 111 D.P.R. 117 (1981); *E.L.A. v. Rosso*, 95 D.P.R. 501 (1967).

Como toda facultad, ésta no es absoluta. Así, pues, el poder de expropiación del Estado se encuentra limitado por

el Art. II, Sec. 9 de la Constitución del Estado Libre Asociado de Puerto Rico, que dispone que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 308. Conforme este claro mandato constitucional, hemos reconocido que el poder del Estado para expropiar propiedad privada está restringido por la exigencia del pago de una justa compensación, que el bien expropiado se destine para un fin o uso público y que se haga conforme el procedimiento establecido por ley. *Culebra Enterprises Corp. v. E.L.A.*, 143 D.P.R. 935 (1997); *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943 (1991).

Reiteradamente hemos señalado que la Asamblea Legislativa goza de "amplio margen" para determinar qué uso se considerará público y así autorizar a un ente gubernamental para adquirir bienes mediante expropiación forzosa. *Estado v. Fajardo Sugar Co.*, 79 D.P.R. 321, 330 (1953) (*Fajardo Sugar*); *E.L.A. v. Rexco Industries, Inc.*, 137 D.P.R. 683, 688 (1994). En *Fajardo Sugar*, ante, pág. 330, indicamos que la determinación de la Legislatura en tal sentido merece deferencia "hasta tanto se demuestre que envuelve una imposibilidad ...". Véanse, también: *Monongahela Navigat' n Co. v. United States*, 148 U.S. 312, 327 (1893) ("The legislature may determine what private property is needed for public purposes[;] that is a question of political and legislative [matter]"); *Kelo v. New London*, 162 L.Ed. 2d 439, 453–454 (2005), 545 U.S. 469 (2005) ("For more that a century, our public use jurisprudence has wisely eschewed rigid formulas and intrusive scrutiny in favor of affording legislatures broad latitude in determining what public needs justify the use of takings power"). En virtud de tal deferencia, se presume que un uso es público si así ha sido declarado por la Asamblea Legislativa o el organismo delegado. *Fajardo Sugar*, ante, pág. 334.

Mediante la aprobación de la ley habilitadora de la entonces Autoridad de Fuentes Fluviales —hoy Autoridad de Energía Eléctrica— Ley Núm. 83 de 2 de mayo de 1941, en su Sec. 23 (22 L.P.R.A. sec. 213), la Asamblea Legislativa dispuso que toda "propiedad con sus accesorios que la Autoridad estime necesario y conveniente utilizar para llevar a cabo los propósitos expresados en las secs. 191 a 217 de este título, quedan por la presente declarados de utilidad pública". Por lo tanto, aquella propiedad que sea necesaria —según lo estime la Autoridad— para mejorar, conservar o desarrollar el suministro de energía eléctrica en Puerto Rico, ya ha sido declarada de utilidad pública por la Asamblea Legislativa.

Como vemos, tanto la Asamblea Legislativa como la Autoridad hicieron ya una determinación de fin público que valida la expropiación efectuada en este caso. Ciertamente, una expropiación que tiene como propósito mejorar el suministro de energía eléctrica en el este del país persigue racionalmente un objetivo de utilidad pública. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 241 (1984) ("rationally related to a conceivable public purpose"). No cabe hablar en este caso, entonces, como lo ha hecho el recurrido, que la expropiación del derecho real de servidumbre en este caso carece de un fin público.

Como indicamos ya, el recurrido centra su discusión en un cuestionamiento sobre la selección del lugar por donde habrá de discurrir la servidumbre del tendido eléctrico. En el caso seminal de *M. Mercado e Hijos v. Tribl. Superior*, 85 D.P.R. 370, 376–377 (1962), ante un cuestionamiento de esta naturaleza, establecimos la norma a seguir y señalamos:

> En efecto, se ha sostenido que una vez se establezca que el uso para el cual se destina la propiedad expropiada constituye un fin público, *no corresponde a los tribunales revisar las determinaciones sobre la naturaleza o extensión del derecho a adquirirse, la cantidad de terreno a expropiarse, la necesidad o lo*

*adecuado del sitio en particular*, porque ésta es una función que ejerce la legislatura bien directamente o delegándola en agencias o funcionarios públicos. ... *Aceptado que el propósito es público ... no nos corresponde revisar el ejercicio de la discreción administrativa en la selección de los terrenos expropiados o su adaptabilidad para el uso público específico a que se destinan.* (Énfasis suplido.)

Concluimos, entonces, que bajo este estándar de amplia deferencia a la determinación de la Asamblea Legislativa respecto el fin público que persigue una expropiación, así como la deferencia debida a la determinación del organismo gubernamental sobre la naturaleza o extensión de la propiedad a expropiarse y el lugar por donde deberá discurrir la servidumbre, no es función nuestra cuestionarla revisando la corrección de esa determinación. Nada hay en el expediente que nos permita concluir que la decisión de la Autoridad ha sido arbitraria y caprichosa, y que "envuelve una imposibilidad". En atención a ello, hemos resuelto que no habremos de intervenir para cuestionar esa determinación. *M. Mercado e Hijos v. Tribl., Superior*, ante.

El hecho de que la servidumbre expropiada sea para beneficio de una corporación pública como la Autoridad, no incide sobre nuestra determinación y no varía el estándar de deferencia que hemos aplicado anteriormente. Claramente la Autoridad está cumpliendo con una misión de alto interés público al mejorar la infraestructura energética del país mediante el desarrollo de este proyecto. No tiene razón el Tribunal de Apelaciones cuando indica que se debe variar el estándar de deferencia debida cuando se expropia para beneficio de una corporación pública.

El procedimiento de expropiación forzosa no es el vehículo apropiado para darle curso a las alegaciones de la parte recurrida. Una vez validamos la determinación de fin público de la expropiación de la servidumbre, ahí concluye el análisis.

Finalmente, ya que hemos resuelto que la expropiación

de la servidumbre en cuestión adelanta un fin público, procede entonces la entrega material de ésta a la Autoridad, por lo que resulta innecesario que nos expresemos sobre el planteamiento que trajo ante nuestra atención del Hon. juez Cabán García. El planteamiento se tornó académico con nuestra determinación.

Por los fundamentos antes expresados, los que aquí incorporamos, *se dicta sentencia para revocar al Tribunal de Apelaciones y se devuelve el caso al foro primario para que continúen los procedimientos acorde con lo aquí resuelto.*

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López disintió con un opinión escrita, a la que se unió el Juez Asociado Señor Rivera Pérez.

(*Fdo.*) Aida Ileana Oquendo Graulau
*Secretaria del Tribunal Supremo*

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López, a la cual se une el Juez Asociado Señor Rivera Pérez.

La aplicación *mecánica y automática* de preceptos legales y normas jurisprudenciales a los hechos de un caso en particular tiene la indeseable consecuencia de llevar a los tribunales a la comisión de un *serio y grave* error, a saber: *la emisión de una decisión no sólo errónea sino que, peor aún, injusta.* La Sentencia que hoy emite una mayoría de los integrantes del Tribunal en el presente caso es un ejemplo claro —pudiéramos decir, "clásico"— de lo expresado.

La decisión mayoritaria emitida se limita a repetir unas citas legales y unas expresiones hechas por este Tribunal

en unas decisiones referentes a la materia de expropiación, creando una *ilusión* de corrección jurídica, *la cual esconde una patente y crasa violación al debido procedimiento de ley en su dimensión procesal.* En específico, la decisión mayoritaria emitida, amparándose en la deferencia que merece una determinación de fin público que haga el Estado, *viola* el *derecho* que tiene el titular del predio expropiado a formular *válidas objeciones* a dicha expropiación. Veamos.

I

Los hechos, *en apretada síntesis,* demuestran que uno de los miembros de la Sucesión Planas Parrilla presentó una oposición a la solicitud de expropiación que presentó el Estado Libre Asociado de Puerto Rico (E.L.A.) a favor de la Autoridad de Energía Eléctrica (A.E.E.) relacionada con una finca propiedad de la mencionada Sucesión. En dicha oposición se alegó que la finca en controversia ya estaba sujeta a otra servidumbre eléctrica, producto de una primera expropiación a favor de la A.E.E. Se alegó también que esta situación causaba que la finca estuviese totalmente "rodeada" de cables de alta tensión, *razón por la cual lo razonable era que se expropiara la totalidad de la finca.*

Resulta importante enfatizar el hecho de que el opositor alegó que la ruta *original* por donde discurrirían las líneas eléctricas de la nueva servidumbre *no* era la que ahora pretendía establecer la A.E.E., ya que dicha agencia alegadamente *había desviado* la referida ruta *únicamente con el propósito de beneficiar a uno de sus ex ejecutivos*; esto es, que originalmente la finca a ser expropiada era otra, perteneciente a dicho ex empleado. *En específico*, y en relación con dicha alegación, el opositor señaló que dicha información le había sido brindada por el jefe de la construcción del referido proyecto, el ingeniero Rodríguez Fonseca.

Así las cosas, la Sucesión Planas Parrilla presentó una solicitud de orden para que se le proveyera copia de todos los documentos utilizados para escoger el lugar a ser expropiado, entiéndase, certificaciones, estudios, evaluaciones del lugar de la expropiación, propuestas y planos de construcción. La entrega de dichos documentos era necesaria, según indicó la Sucesión, para poder rebatir adecuadamente la alegación del E.L.A. en cuanto a que la A.E.E. había escogido la ruta de menor impacto económico y social para establecer la servidumbre. Además, solicitó que se le permitiera *deponer* a varios ejecutivos y empleados de la Sucesión.

El foro de instancia *denegó* tanto la solicitud de citación de testigos como la petición de descubrimiento de prueba presentada. Concluyó el referido foro que en un procedimiento de expropiación forzosa, el demandado no podía iniciar un descubrimiento de prueba dirigido a obtener información para sostener su alegación de que la expropiación era arbitraria y caprichosa.

Inconforme, la Sucesión acudió, en revisión, ante el Tribunal de Apelaciones. Dicho foro *revocó* la determinación del tribunal de instancia. Concluyó que cuando el E.L.A. expropia una propiedad a favor de una corporación pública como la A.E.E., *la cual posee una estructura operacional y financiera característica de una corporación privada*, la determinación de fin público no puede estar impregnada de la "inmunidad" que revisten las decisiones tomadas por instrumentalidades enteramente públicas. Determinó, por consiguiente, que dadas las circunstancias particulares del caso, en el cual se alegaba la existencia de intereses personales en la decisión tomada por la A.E.E. al solicitar la expropiación de la propiedad de la Sucesión Planas Parilla, procedía que el foro primario dilucidara en una vista la existencia o ausencia de fin público y permitiera un amplio descubrimiento de prueba a las partes y citara testigos que esclarecieran el fin que se perseguía con la expropiación.

Inconforme, el Procurador General, en representación del E.L.A., acudió ante este Tribunal mediante un recurso de *certiorari*, en revisión de la anterior determinación. Expedimos el recurso.

## II

La Sentencia mayoritaria se limita a informarnos que reiteradamente hemos resuelto que el poder de expropiación forzosa del Estado "es una facultad inherente al poder soberano del Estado y, como tal, superior a todos los derechos de propiedad"; que, no obstante lo anterior, dicha facultad "no es absoluta", y que dicho poder de expropiación se encuentra limitado por las disposiciones de la Sec. 9 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1. Sentencia, págs. 709 y 710.

En segundo término, la Sentencia mayoritaria nos señala que, reiteradamente, hemos expresado que la Asamblea Legislativa goza "de 'amplio margen' para determinar qué uso se considerará público y así autorizar a un ente gubernamental para adquirir bienes mediante expropiación forzosa"; que, en virtud de tal deferencia, "se *presume* que un uso es público si así ha sido declarado por la Asamblea Legislativa o el organismo delegado" (énfasis suplido), y que habiendo la Legislatura y la A.E.E. hecho una determinación sobre fin público en el presente caso, la expropiación realizada es válida. Sentencia, págs. 710 y 711.

Por último, nos ilustra la Mayoría a los efectos de que, siendo ello así, "no es función nuestra cuestionarla revisando la corrección de esa determinación", razón por la cual procede la revocación de la sentencia emitida por el Tribunal de Apelaciones. Sentencia, pág. 712.

## III

En su razonamiento, mecánico y automático, la Mayoría

pasa por alto varios factores importantes en la correcta solución del presente caso. En primer lugar, olvida lo preceptuado, *precisamente*, en la Sec. 9 del Art. II de nuestra Constitución, *supra*, pág. 323, que establece, en lo pertinente, que *no* "se tomará o perjudicará la propiedad privada para uso público *a no ser* mediante el pago de una justa compensación *y de acuerdo con la forma provista por ley*". (Énfasis suplido.)

En relación con lo antes expresado, recordamos varias disposiciones de las Reglas de Procedimiento Civil, referentes a pleitos de expropiación forzosa. Establece la Regla 58.3(b) que en los referidos litigios el demandante incluirá, como demandados, a todas las personas que tengan, o puedan tener, un derecho sobre la propiedad a ser expropiada. 32 L.P.R.A. Ap. III. *Por otro lado*, el inciso (b) de la Regla 58.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, especifica la información que se deberá incluir en el emplazamiento, a saber: el demandante advertirá al demandado, o demandados, que dentro de los veinte días después de efectuado el emplazamiento, éste, o éstos, deberán notificar al abogado del demandante su contestación, la cual incluirá las *objeciones* que tengan a la expropiación y que, el no hacerlo, constituirá una renuncia *a su derecho de hacer objeciones a la expropiación* y una aceptación de la autoridad del tribunal para proceder a ver el pleito y a fijar la justa compensación.

A esos mismos efectos, la Regla 58.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que si un demandado tuviese *alguna defensa u objeción* a la adquisición de la propiedad, notificará su contestación dentro de veinte días después de haber sido notificado de la expropiación. La contestación identificará la propiedad en la cual el demandado sostiene que tiene un derecho, expondrá la naturaleza y el alcance de dicho derecho, *y expondrá todas sus defensas y objeciones a la adquisición de su propiedad*. Un

demandado *renunciará* a todas las defensas y objeciones que no se presenten así, pero en la vista de la cuestión de justa compensación hubiese o no comparecido o contestado con anterioridad a dicha vista, *podrá dicho demandado ofrecer evidencia en cuanto a la cuantía de la compensación que deba pagarse por su propiedad* y podrá participar en la distribución de la suma adjudicada. Íd.

Como resulta obvio, las Reglas de Procedimiento Civil reconocen el *derecho* del demandado, dentro de un procedimiento de expropiación forzosa, a *objetar* la expropiación de su propiedad y a *protestar* la cuantía otorgada como justa compensación. En el presente caso, estamos ante una denegatoria del foro primario de permitir un descubrimiento de prueba a los efectos de que los demandados, Sucesión Damián Planas Parilla, puedan estar en posición de *oponerse adecuadamente* a la toma de su propiedad y probar que la selección de los terrenos fue arbitraria y caprichosa. *Entendemos que dicha determinación es incorrecta.*

Ya este Tribunal expresó en *E.L.A. v. Fonalledas Córdova*, 84 D.P.R. 573, 579 (1962), que en el procedimiento de expropiación forzosa es el titular del dominio *quien tiene el derecho a formular sus defensas y objeciones, tanto al carácter público del uso a que se destinará la propiedad como a la cuantía declarada como justa compensación.* Lo anterior es cónsono con el mandato del Art. II, Sec. 9 de nuestra Constitución, *supra*, que preceptúa que el poder del Estado para expropiar propiedad privada está limitado por la exigencia del pago de una justa compensación, que la cosa sea para un fin público *y que se siga el procedimiento establecido por ley.* Véanse: *López y otros v. A.E.E.*, 151 D.P.R. 701 (2000); *Culebra Enterprises Corp. v. E.L.A.*, 143 D.P.R. 935 (1997); *Adm. de Terrenos v. Nerashford Dev. Corp.*, 136 D.P.R. 801 (1994); *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943 (1991); *E.L.A. v. Rosso*, 95 D.P.R. 501 (1967).

## IV

Señalamos anteriormente que, dentro del procedimiento de expropiación forzosa, el demandado puede formular defensas y objeciones a dicho procedimiento. Obviamente, para poder estar en posición de oponerse adecuadamente a una posible expropiación, será necesario que se le permita utilizar los mecanismos de descubrimiento de prueba. En *Martínez Rivera v. Tribunal Superior*, 85 D.P.R. 1 (1962), este Tribunal expresó que la Regla 58.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que las Reglas de Procedimiento Civil *gobiernan* el procedimiento de expropiación de propiedad.[1] Sin embargo, la Regla 58, ante, no dispone nada acerca del descubrimiento de prueba permitido a las partes dentro del procedimiento.

Precisamente, en el antes citado caso *Martínez Rivera v. Tribunal Superior*, este Tribunal se enfrentó al asunto del descubrimiento de prueba en los casos de expropiación forzosa de propiedad particular. Allí, al reconocerse que las Reglas de Procedimiento Civil regían este procedimiento, se atendieron las reglas de descubrimiento de prueba y se resolvió que debía permitírsele al titular de la propiedad a ser expropiada inspeccionar el informe preparado por el perito del Estado a los efectos de poder impugnar la cuantía calculada como justa compensación.

Este Tribunal *razonó que los procesos de descubrimiento de prueba antes del juicio debían servir de guía en los procedimientos de expropiación forzosa y expresó, como principio rector, que un sistema liberal de descubrimiento de prueba antes del juicio facilitaba la tramitación de los pleitos y evitaba los inconvenientes, sorpresas e injusticias que*

---

[1] Específicamente dispusimos que las Reglas 23 a la 34 de Procedimiento Civil, 32 L.P.R.A. Ap. III, referentes al descubrimiento de prueba, con excepción de la Regla 32 (que se refiere al examen físico y mental de los testigos), regían el procedimiento de expropiación.

*surgen cuando las partes ignoran hasta el día de la vista
las cuestiones y los hechos que en realidad son parte del
litigio.* " 'Para precisar con exactitud cuáles son las verda-
deras cuestiones en controversia y aclarar cuáles son los
hechos que deberán probarse en el juicio, es imprescindible
recurrir a los procedimientos para descubrir prueba y ob-
tener deposiciones antes del juicio.' " *Martínez Rivera v.
Tribunal Superior*, ante, pág. 9.([2])

Vemos que, en ese caso, el descubrimiento de prueba se
permitió dentro de la impugnación de la cuantía otorgada
como justa compensación y se limitó a autorizar la inspec-
ción o copia del informe preparado por el perito tasador del
Estado. *Sin embargo, de ninguna forma limitamos el des-
cubrimiento de prueba a las instancias en que la parte úni-
camente impugna la referida cantidad.*

Es más, en *Martínez Rivera v. Tribunal Superior*, ante,
pág. 13, *este Tribunal expresó que el ámbito de descubri-
miento de prueba depende de los hechos de cada caso en
particular*,([3]) *"y en lo que no se ha previsto en esta opinión,
debe dejarse a la informada discreción del tribunal de ins-
tancia que debe guiarse por el propósito tantas veces men-
cionado de lograr la celebración de un juicio justo, rápido y
económico, sin ventajas para ninguna de las partes"*.

## V

*No* puede ser de otra forma. Sabido es que el *debido
proceso de ley* se manifiesta en dos dimensiones distintas:
sustantiva y procesal. En lo referente al debido proceso de
ley en su dimensión procesal, *el debido proceso le impone al
Estado la obligación de garantizar que la interferencia con
los intereses de libertad y de propiedad del individuo se*

---

([2]) Citando a *Sierra v. Tribunal Superior*, 81 D.P.R. 554, 560 (1959).

([3]) Citando a *Frank C. Sparks Company v. Huber Baking Company*, 114 A.2d
657 (Del. 1955).

*haga a través de un procedimiento justo y equitativo.*
Véanse: *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133
D.P.R. 881, 887–888 (1993); *López Vives v. Policía de P.R.*,
118 D.P.R. 219 (1987). *Por otro lado*, reiteradamente he-
mos resuelto que una vez se incorporan ciertos derechos,
por acción legislativa, *éstos se convierten en parte integral
del debido proceso de ley.* Véase: *Pueblo v. Vega*, 148 D.P.R.
980, 988 (1999). Dicha norma jurisprudencial aplica tanto
a los derechos incorporados en las Reglas de Procedimiento
Criminal como a las Reglas de Procedimiento Civil.(4)

## VI

Somos conscientes del hecho de que el suministro de
energía eléctrica en nuestro país es algo sumamente im-
portante para nuestros conciudadanos, razón por la cual la
construcción de nuevas líneas eléctricas para mejorar el
servicio —*en ocasiones, pobre*— que brinda la A.E.E. es, sin
duda, un fin público. *Con lo que no podemos estar de
acuerdo es con la posición de la Mayoría en cuanto a que,
una vez el foro judicial valida la determinación de fin pú-
blico, ahí concluye todo el proceso.*

*No* podemos ignorar que el *derecho* del titular de una
propiedad que está siendo expropiada a objetar que el Es-
tado tome su propiedad, *está claramente preceptuado en la
Reglas de Procedimiento Civil y, por ende, es parte del de-
bido proceso de ley.* Siendo ello así, somos del criterio que
un demandado, dentro de un procedimiento de expropia-
ción forzosa, puede impugnar la selección de su propiedad
y alegar que se hizo de forma arbitraria, caprichosa o me-
diando fraude o mala fe. *Para fundamentar tal alegación,
es necesario que se permita al demandado descubrir*

---

(4) En relación con ello, véase *Hospital Dr. Domínguez v. Ryder*, 161 D.P.R. 341
(2004), a los efectos de que cuando el Estado provee remedios post sentencia judicial,
resolución o decisión administrativa, estos remedios se convierten en un interés pro-
tegido que da base a un reclamo de un debido proceso de ley.

*prueba*. Esto es, debe permitírsele al demandado que así lo solicite, descubrir la prueba documental necesaria —que, como ocurre en el presente caso, se encuentra bajo el exclusivo control de la A.E.E.— tales como certificaciones, estudios, evaluaciones del lugar de la expropiación, propuestas y planos de construcción, tal y como lo solicitaron en el presente caso los miembros de la Sucesión Planas Parilla. *Nuestro sentido de justicia así nos lo manda.*

Además, el E.L.A. y sus agencias, bajo el manto de inmunidad conferido respecto a lo que constituye un fin público, *no pueden adelantar intereses privados.* Es por ello que entendemos que, *en el presente caso*, de probarse la existencia de unos planos originales en los cuales la servidumbre discurría por otra finca y que se *cambió* su localización para *favorecer* a un ex empleado de la A.E.E., *la conclusión a los efectos de que la actuación de esta agencia fue arbitraria y caprichosa sería inevitable, razón por la cual no podría sostenerse.*

Por las razones antes expresadas, *confirmaríamos* la sentencia emitida en el presente caso por el Tribunal de Apelaciones para permitir a la Sucesión Planas Parilla que presente prueba para impugnar la selección del lugar por donde discurrirá la servidumbre a favor de la A.E.E.